Filed 11/14/23  UBO Holdings v. Oldham CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| UBO HOLDINGS,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANDREW OLDHAM et al.<br><br>        Defendants and Appellants. | A165914<br><br>(San Mateo County<br>Super. Ct. No. 21-CIV-01962) |

Andrew Oldham, Jennifer Siem, and Oldham Professional Group (OPG; collectively, defendants) appeal an order awarding plaintiff UBO Holdings (UBO)[1] $17,333 in sanctions against defendants' counsel, Brewer Offord & Pedersen LLP (Brewer), after UBO partially succeeded on eight motions to compel discovery.  Defendants contend Brewer acted with substantial justification in withholding discovery, the amount of sanctions was arbitrary and punitive, and there was no finding Brewer advised them to engage in misuse of the discovery process.  (Code Civ. Proc., § 2023.030, subd. (a); undesignated statutory references are to this code.)  We disagree and thus affirm.

---

[1] Plaintiff Michael Szelenyi assigned to UBO all his rights, title, and interest in the sanctions award, and we subsequently substituted UBO as respondent in this appeal.  For clarity, we refer to Szelenyi as the plaintiff.

1

# BACKGROUND

reVIS, Inc. (reVIS), a real estate consultant corporation, was formed in 2019 to provide lead generation, marketing, branding, and promotional services to the real estate industry. Szelenyi was its chief executive officer and a director, Oldham was the chief financial officer, and Siem was the corporate secretary. In addition, Oldham and Siem respectively served as corporate secretary and chief executive officer of OPG. According to Szelenyi, OPG orally agreed in 2019 to pay reVIS 100 percent of gross commission income from any real estate transactions closed by Oldham or Siem; 50 percent of the gross commission income from any real estate transactions closed by any other OPG real estate agent for which reVIS provided a lead; and 50 percent of the gross commission income from any real estate transaction closed by any real estate agent that joined OPG after reVIS was formed.

According to Szelenyi, however, Oldham and Siem excluded from their gross commission income calculations certain payments Siem was required to make to a third party, and they neglected duties owed to reVIS. Moreover, Oldham implemented a revised agreement reducing the commission due to reVIS for sales by Siem or Oldham to 25 percent; reduced the commission due to reVIS for sales by all other OPG real estate agents arising from a reVIS lead to 25 percent; and eliminated commission for sales by real estate agents hired after reVIS was formed. This occurred even though no one from reVIS signed the revised agreement. And Oldham and Siem took control of all the management, databases, and email software services used by reVIS.

Szelenyi filed a shareholder derivative lawsuit on behalf of reVIS, against defendants. Szelenyi alleged defendants breached an oral contract

2

for reVIS's referral fee and breached their fiduciary duties when a revised, written contract was formed with new terms added to the agreement.

In October 2021, Szelenyi served defendants with requests for production of documents, requests for admission, form interrogatories, and special interrogatories. Defendants responded on December 9, after Szelenyi agreed to a series of extensions. On January 13, 2022, Szelenyi sent defendants a letter identifying concerns with the discovery responses and requesting supplemental responses by January 19. Brewer agreed to supplement certain limited responses, but it did not provide a date by which the responses would be produced. Brewer also refused to extend Szelenyi's deadline to file motions to compel with respect to responses still in dispute or responses they agreed to supplement. And when defendants served supplemental responses, they did not provide responses to certain agreed-upon requests for production. An informal discovery conference in February with a court commissioner failed to resolve all the discovery issues in dispute.

In March 2022, Szelenyi filed eight motions to compel further responses to a total of 43 requests for production and 55 special interrogatories. The documents and information sought included real estate transactions closed by OPG agents; monetary transfers between and among defendants and Szelenyi; reVIS's and OPG's finances, corporate structure, business operations, and employees; and communications relating to Szelenyi.[2]

---

[2] Szelenyi sought an order compelling Oldham to provide code-compliant responses to the following requests for production: all documents relating to Oldham's payments to reVIS (No. 4); documents related to payments Oldham made or received from OPG (Nos. 6 & 7); documents relating to real estate transactions Oldham closed (Nos. 8 & 9); all communications regarding reVIS (No. 24); documents related to OPG's ownership and government submissions (Nos. 31, 32 & 34); and reVIS's financial statements (No. 35).

According to Szelenyi, rather than providing appropriate responses to the requests for production — that they would comply, lacked the ability to comply, or objected to the demand — defendants responded they would ascertain whether they possessed responsive documents. (§ 2031.210, subd. (a).) Brewer did not provide verified supplemental responses. Szelenyi also argued defendants refused to respond to interrogatories within the permissible scope of discovery, provided terse responses rather than detailed information, and refused to provide any information regarding real estate transactions closed by OPG real estate agents, even though that information was critical to the case. Szelenyi requested $25,980 in monetary sanctions against defendants and Brewer.

Several months after Szelenyi filed his motions to compel — but before the hearing — defendants provided supplemental responses to 18 requests for production and 29 interrogatories.[3] Defendants thereafter filed

_____

For OPG, Szelenyi sought additional responses for the following requests for production: OPG payments made to or received from reVIS (Nos. 4 & 5); real estate transactions closed by OPG (Nos. 6, 7, 9 & 10); documents related to OPG's board of directors and shareholders (Nos. 11, 12 & 13); OPG payments made to or received from Siem and Oldham (Nos. 14 & 22–25); and communications referring to or relating to Szelenyi (No. 27).

For reVIS, Szelenyi sought additional responses for the following requests for production: payments reVIS made to or received from OPG, or made to Siem or Szelenyi (Nos. 4, 5, 6, 8 & 9); reVIS's financial statements (No. 18); and documents referring or relating to Szelenyi (No. 28).

In terms of interrogatories, Szelenyi sought information from reVIS regarding reVIS's monetary transfers made to OPG (Nos. 1–3); real estate transactions closed by OPG agents (Nos. 5–8), reVIS's shareholders, directors and service providers (Nos. 9–12, 14 & 16); and reVIS's bank accounts (No. 17). He sought similar additional interrogatory responses from Siem.

[3] This included providing all communications between Oldham and Siem or any person referring to reVIS, and all documents regarding Oldham or Siem's ownership of OPG shares and documents relating to OPG shareholders. Additional interrogatory responses included descriptions of the

oppositions to the motions to compel, arguing many of the requests were moot based on the recently produced documents and responses, and the remaining requests were irrelevant, overbroad, burdensome, and infringed on their rights to privacy. For example, they argued a request seeking any and all documents related to real estate transactions closed by defendants, payments to OPG by the remaining defendants, and commission paid by OPG to defendants' broker from September 1, 2019 to present were overbroad, unlimited as to time and scope, and not reasonably particularized.

The trial court partially granted Szelenyi's motions.[4] It rejected 20 requests for production, noting the requested documents were not reasonably particularized as to each category. For example, the court stated, requesting documents " 'relating to or referring to' " various general matters was not a reasonably particularized demand. The court did, however, grant one request — concluding OPG's objections were meritless — and partially granted three requests — requiring OPG to provide agendas and meeting minutes, as well as emails regarding Szelenyi, because doing so was not unduly burdensome. The court limited documents to be produced to September 1, 2019 to November 30, 2020 without prejudice to Szelenyi requesting additional responsive documents after that time period if such documents are necessary.

In addition, the trial court determined defendants' supplemental responses to 24 interrogatories rendered moot Szelenyi's motion on those

---

business relationships between all defendants, identities of officers and employees of OPG from September 1, 2019 to present, identification of all positions Oldham and Siem held at reVIS, and identification of persons who provided services to OPG or reVIS.

[4] The court issued a tentative ruling that it further refined in a final order.

particular requests.  Although the court denied several of Szelenyi's interrogatory requests as unreasonably overbroad or because defendants had fully answered the interrogatories, it ultimately granted Szelenyi's request for further responses to 18 interrogatories.[5]  The court imposed sanctions on Brewer, explaining the motions to compel were occasioned by counsel's actions, not those of defendants.  But because Szelenyi was only partially successful, the court reduced the sanction amount to $17,333.

## DISCUSSION

Defendants argue the trial court abused its discretion by imposing monetary sanctions on their counsel.  We disagree — the record demonstrates the court's decision was not arbitrary, capricious, or whimsical.  (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 73 [abuse of discretion standard of review for discovery sanctions orders].)

Courts may impose a range of penalties for "misuse of the discovery process," including monetary sanctions.  (§ 2023.030; *Cedars–Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12.)  Relevant here, misuse of

---

[5] Among other things, those interrogatories include requiring defendants to identify all monetary transfers they have received from reVIS, and for reVIS to identify all monetary transfers it made to OPG, by loan amount, date, lender, borrower, and terms.  In addition, defendants were ordered to identify all real estate transactions closed by OPG, Oldham, or Siem, the monetary transfers made to reVIS from those transactions; all monetary transfers OPG, Oldham, or Siem made to a third party relating to those transactions; all monetary transfers received by Oldham or Siem from OPG relating to those transactions; and all bank accounts maintained by OPG.  Siem, OPG, and reVIS were ordered to provide reasons for each monetary transfer received from each other.  OPG was ordered to identify its present and former bank accounts by name of financial institution, account number, the date the account was opened, date the account closed, and if applicable, the identity of each person authorized to sign checks or access the account.

6

the discovery process includes unsuccessfully opposing without substantial justification a motion to compel further discovery responses. (§ 2023.010, subds. (e), (h).) Courts must impose monetary sanctions against the party, person, or attorney who unsuccessfully opposes the motion to compel further responses unless the party acted with substantial justification or there were other circumstances that make the sanction unjust. (*City of Los Angeles v. PricewaterhouseCoopers, LLC* (2022) 84 Cal.App.5th 466, 498.)

## I.

Defendants contend their counsel acted with substantial justification in objecting to Szelenyi's discovery requests. Specifically, Brewer opposed various requests as not reasonably particularized or limited in time or scope, thus posing an undue burden. (§ 2031.030, subd. (c)(1).) According to defendants, the trial court ultimately agreed because it denied all but four of Szelenyi's requests for production as not being reasonably particularized. It further limited the scope of Szelenyi's interrogatories to the time period of September 2019 to November 2020, rather than September 2019 to the present. The court, defendants argue, denied 90 percent of Szelenyi's requests for production and 53 percent of Szelenyi's interrogatories, thus demonstrating their objections were substantially justified — "clearly reasonable because [they were] well grounded in both law and fact" — even though the court did not make that express finding. (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) Not so.

As a preliminary matter, we infer the trial court made all findings necessary to support its order — as relevant here, that defendants acted without substantial justification in opposing the discovery requests — provided those findings are supported by the record. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1292.) Moreover, there is no requirement the court

7

make an explicit finding the defendants did *not* act with substantial justification.  (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 294.)  "[T]his is implied in the order awarding sanctions."  (*Ibid*.)  Thus, we infer the finding that defendants did not act with substantial justification in the absence of an express finding on that point.

More importantly, the trial court's ultimate denial of a portion of Szelenyi's discovery requests does not demonstrate that defendants' objections were substantially justified.  (*Doe v. United States Swimming, Inc.*, *supra*, 200 Cal.App.4th at p. 1435 [party opposing sanctions bears the burden demonstrating substantial justification]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1990) 223 Cal.App.3d 1429, 1437.)  Courts may impose sanctions on motions to compel that are partially granted.  (*Mattco Forge*, at p. 1437.)  Here, Szelenyi moved to compel responses to 43 requests for production and 55 special interrogatories — a total of 98 discovery requests.  For 69 of these requests, Szelenyi obtained the sought discovery — 47 requests for which defendants produced supplemental responses after Szelenyi filed his motions to compel, and 18 interrogatories and four requests for production the court granted — constituting approximately 70 percent of the discovery requests.  Although defendants use different percentages, the relevant number here is the total *number* of requests where Szelenyi succeeded.  Thus, defendants are required to demonstrate they had substantial justification in opposing those 69 requests, not the number of discovery requests the court ultimately rejected.  (*Ibid*.)  Defendants cannot.

To begin, only *after* Szelenyi filed a motion to compel and several months had passed, defendants served further responses to 18 of Szelenyi's requests for production and 29 of Szelenyi's special interrogatories, a total of

8

47 requests. Indeed, the court expressly stated defendants' supplemental interrogatory responses rendered Szelenyi's requests moot. Defendants' disclosure of additional documents and responses just before filing their opposition to the motion to compel does not render the responses substantially justified. Rather, courts may award sanctions even when requested discovery was provided to the moving party *after* a motion to compel was filed. (Cal. Rules of Court, rule 3.1348(a); *Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 230 [" 'Belated compliance with discovery orders does not preclude the imposition of sanctions . . . Last-minute tender of documents does not cure the prejudice to opponents nor does it restore to other litigants on a crowded docket the opportunity to use the courts' "].)

For the remaining 51 discovery requests, the trial court granted 18 of Szelenyi's interrogatories. The court could rationally conclude defendants' relevance objection to interrogatories — those seeking information regarding real estate transactions closed by OPG and the resulting monetary transfers OPG made to reVIS — lacked justification. (*Foothill Properties v. Lyon/Copley Corona Associates* (1996) 46 Cal.App.4th 1542, 1557.) Szelenyi alleged defendants did not pay all required commissions. Information regarding closed real estate transactions and resulting monetary transactions was relevant. (*Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 712, fn. 8 [for discovery, information is relevant if it reasonably assists a party in evaluating the case, facilitating settlement or preparing for trial].) That the court ultimately limited the time frame for those interrogatories to a period ending in November 2020 does not demonstrate Szelenyi's request was overbroad, as defendants contend. The court expressly stated the time limitation did not indicate the information beyond November 2020 was not

9

discoverable. Instead, the court acknowledged Szelenyi could seek that information later in the litigation.

Similarly, the trial court partially granted Szelenyi's requests for production — requiring defendants to produce agendas and meeting minutes regarding OPG's directors and shareholders, payments OPG made or received from Oldham and Siem, and OPG communications referring to or relating to Szelenyi. The court determined defendants' objections to one request for production were meritless. It rejected another because defendants had not persuasively demonstrated that searching through 34 months of emails for communications regarding Szelenyi would be unduly burdensome. Rather than demonstrating those objections were substantially justified, defendants focus on the requests for production the court denied. To repeat, that is not the relevant inquiry. (*Mattco Forge, Inc. v. Arthur Young & Co.*, *supra*, 223 Cal.App.3d at p. 1437.) Defendants fail to demonstrate they acted with substantial justification as to the discovery requests the court granted.

## II.

Defendants contend the sanctions amount was unreasonable, arbitrary, and punitive. We disagree.

Monetary sanctions for misuse of discovery cannot be imposed as punishment. (*City of Los Angeles v. PricewaterhouseCoopers, LLC*, *supra*, 84 Cal.App.5th at p. 499.) They must be compensatory and not exceed reasonable expenses incurred in bringing the motion to compel, such as attorney fees, filing fees, referee fees, and other costs. (§ 2023.030, subd. (a); *Ghanooni v. Super Shuttle* (1993) 20 Cal.App.4th 256, 262 (*Ghanooni*).) Nothing in the record here indicates the expenses incurred were unreasonable or punitive.

10

In support of the motion for sanctions, Szelenyi's counsel filed a declaration summarizing work on the motions to compel. An associate attorney at the firm spent 45 hours drafting and revising the eight motions to compel, the supporting papers, as well as drafting a declaration detailing the discovery exchanges with Brewer. Based on the Fitzpatrick Matrix and locality adjustments, the associate counsel with 17 years of experience charged $500 per hour for a total of $22,500. (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 702 [hourly rates were supported by adjusted billing matrix].) A partner at the firm spent four hours drafting and revising the motions to compel and the supporting papers. At an hourly rate of $750, the partner charged a total of $3000. With the locality adjustments, the rates charged were actually below those for attorneys with the same years of experience in the San Francisco Bay Area. And rather than awarding Szelenyi's counsel the full requested fees, the trial court reduced the amount to $17,333, "representing the partial success of the motions." Given evidence that Szelenyi's counsel's rates were less than others in the San Francisco Bay Area, the amount awarded is less than what could have been awarded.

Defendants argue we must vacate the sanctions award because the expenses incurred were unreasonable based on the attorneys' purportedly unreasonable hourly rates. And according to defendants, it cannot be reasonably true Szelenyi's counsel spent 45 hours on the motions — Szelenyi's counsel, so the argument goes, merely submitted eight nearly identical motions to compel along with eight nearly identical supporting declarations. This ignores the standard of review — we do not reweigh evidence when reviewing attorney fee awards. (*Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587.) While defendants submitted a declaration

11

opposing sanctions below, it merely detailed communications between opposing counsel regarding service of discovery responses. They failed to submit a counterdeclaration disputing the reasonableness of the billing rates or hours expended. (*Ghanooni, supra*, 20 Cal.App.4th at p. 262; *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [an experienced trial judge is best situated to determine the value of professional services rendered in court].) In those circumstances, "the court's finding as to reasonable expenses is supported by the uncontradicted evidence." (*Ghanooni*, at p. 262.)

Defendants' assertion that the amount awarded was arbitrary and punitive because the trial court failed to provide any specific calculations or written findings is meritless. The "discovery statutes do not require the court's order to 'recite in detail' the circumstances justifying the award" or "make findings at all." (*Ghanooni, supra*, 20 Cal.App.4th at p. 261.) In any event, the court stated the $17,333 in sanctions reflected defendants' success in opposing approximately one-third of the motions to compel. This number is properly reflected in the record. Szelenyi's motions to compel sought responses on 98 discovery requests. Szelenyi prevailed on 69 requests — 47 requests for which defendants served further responses after the motion to compel was filed, and 22 requests the court granted in whole or in part — constituting 70 percent of the motion to compel. It is reasonable to conclude the court further reduced that number because it partially denied some of the 22 requests based on objections that the requests were not reasonably particularized or overly burdensome. (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [presumption order awarding fees is correct on appeal].) In total, Szelenyi was successful on approximately two-thirds of his motions to compel.

To the extent defendants suggest this number was punitive because the court indicated the sanctions award could increase if they reargued the tentative ruling, we disagree. Reasonable expenses includes the time counsel spends researching and preparing the motion to compel, as well as time spent in court in connection with the motion. (*Mattco Forge, Inc. v. Arthur Young & Co.*, *supra*, 223 Cal.App.3d at p. 1438 [attorney time spent in court responding to arguments considered reasonable expenses].) Rearguing the sanctions ruling is "clearly part and parcel of the underlying discovery dispute" that could increase Szelenyi's attorney fees. (*Ibid*.) Reasonably viewed, the court's statement simply informed defendants of this possibility. The amount awarded was not an abuse of discretion.

## III.

Defendants argue the trial court improperly imposed monetary sanctions against their counsel after finding Szelenyi's motions to compel were necessitated by counsel, not the client. We disagree.

Courts may issue monetary sanctions against any attorney advising a party to engage in the misuse of the discovery process. (§ 2023.030, subd. (a).) To reverse, the attorneys must demonstrate they had not advised the client to engage in conduct resulting in sanctions. (*Ghanooni*, *supra*, 20 Cal.App.4th at p. 261.) Brewer fails to do so. Szelenyi sought sanctions against both defendants and Brewer. The declaration Brewer submitted in opposition contained no evidence or argument addressing whether defendants' refusal to produce responses to certain discovery requests was not based on the advice of their attorneys. (*Ibid*.) On this record, the court

13

did not abuse its discretion in concluding the discovery misuse was driven by counsel rather than their clients.[6]

## DISPOSITION

The order imposing monetary sanctions is affirmed.  Szelenyi is entitled to recover costs on appeal.

---

[6] While this appeal was pending, Szelenyi filed a motion to sanction Brewer for pursuing a frivolous appeal.  (Cal. Rules of Court, rule 8.276(a)(1).)  We deny the request.  An appeal is frivolous "only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit."  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  Although we affirm the trial court's sanctions order, there is no indication the appeal is frivolous.

14

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.

A165914