[No. B187003. Second Dist., Div. Two. Dec. 4, 2007.]

CITY OF LONG BEACH, Cross-complainant and Appellant, v.
STEVEDORING SERVICES OF AMERICA, Cross-defendant,
Cross-complainant and Appellant;
PARSONS TRANSPORTATION GROUP, INC., Cross-defendant and
Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for
publication with the exception of part I.

**COUNSEL**

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Caroline E. Chan; Forgie & Leonard, Arthur A. Leonard; Robert E. Shannon, City Attorney, and Belinda R. Mayes, Deputy City Attorney, for Cross-complainant and Appellant.

Horvitz & Levy, Bradley S. Pauley, Julie L. Woods; Bereny & Wallace and Joshua B. Bereny for Cross-defendant, Cross-complainant and Appellant.

Palafox Law Corporation and Julie A. Palafox for Cross-defendant and Respondent.

OPINION

**DOI TODD, J.**—This is an action for contractual indemnity by the City of Long Beach (the City) against Stevedoring Services of America, Inc. (SSA), arising from a personal injury lawsuit filed against the City by an SSA employee. The City leased a portion of the Long Beach pier to SSA for operation of a marine cargo terminal. As part of a project to reconfigure the terminal, the City agreed to relocate certain fire hydrants. One day after a fire hydrant was left standing in a newly created traffic lane at the terminal, a truck driven by an SSA employee hit a concrete guardpost surrounding the hydrant. The employee sued the City and a jury found that the accident was caused by a dangerous condition created by the City and assessed $1.9 million in damages against the City.

The City cross-complained against SSA for contractual indemnity. SSA in turn filed a cross-complaint for equitable indemnity against Parsons Transportation Group, Inc. (Parsons), which provided a consultant to the City to manage the latter part of the reconfiguration project. After a bench trial, the trial court denied the City indemnity from SSA, finding that the City was actively negligent in the reconfiguration of the terminal. Because judgment on the cross-complaint was in favor of SSA, the trial court dismissed as moot SSA's cross-complaint against Parsons, and awarded costs to Parsons as the prevailing party pursuant to Code of Civil Procedure section 1032.

The City appealed the judgment in SSA's favor, and SSA cross-appealed from the order awarding costs to Parsons. We affirm both the judgment in favor of SSA on the City's indemnity cross-complaint and the award of costs to Parsons.

## FACTUAL AND PROCEDURAL BACKGROUND

*Facts*

The City owns marine terminal facilities at the Port of Long Beach. In 1981, the City and an affiliate of SSA entered into a preferential assignment agreement (the Agreement), which gave SSA a 20-year preferential assignment of berths 245 to 247 on Pier J of the Long Beach wharf. SSA operated a marine cargo terminal at the assigned premises and the City essentially served as the landlord.

The Agreement contained an indemnity provision, which stated in part: "Assignee [SSA] shall indemnify, hold, protect and save harmless City . . . from and against any and all actions, . . . brought, made, filed against, imposed upon or sustained by City . . . and arising from or attributable to or caused, directly or indirectly, by the use of the premises and facilities located thereon, or from operations conducted thereon by Assignee [SSA], its officers, agents, employees or invitees, . . . *excluding any and all such actions, . . . to the extent arising from or attributable to or caused, directly or indirectly, from the sole negligence (active or passive) or the contributory active negligence of said City*, its boards, officers or employees, and its agents or any person or persons acting on behalf of City with the City's consent, express or implied, pursuant to this Agreement." (Italics added.)

In the early 1990's, additional space became available at Pier J and the City agreed to lease this space to SSA. The City also agreed to reconfigure the terminal to incorporate the additional space. With input from SSA, the City prepared designs for the reconfiguration and submitted them for SSA's review. The parties conducted weekly construction meetings.

The reconfiguration project involved relocating the vehicular traffic lanes or aisles and relocating the "parking spots" for shipping cargo containers by repaving and restriping the area and placing tire stops in the new parking spots. The restriping essentially involved painting new yellow stripes on the pavement similar to those in a parking lot. The project also involved relocating utilities such as light poles and fire hydrants. Due to the ongoing operations of the terminal, the work was performed in stages. When one area was ready to be repaved and restriped, SSA would move its containers out of the area and would typically move the containers back into the new area "the evening following the afternoon" the work was completed.

The final plans reconfigured the terminal in such a way that certain fire hydrants not previously exposed to vehicular traffic were located in the middle of newly created traffic lanes. The City knew that hydrants located in traffic lanes constituted a collision obstacle and safety hazard and that vehicles in the terminal occasionally struck hydrants. Given the volume of traffic at the terminal, hard objects were frequently hit. The plans therefore called for the fire hydrants to be relocated out of the new traffic lanes and adjacent to light poles. It is undisputed that the City agreed to relocate the hydrants.

In May 1996, the City's manager on the reconfiguration project, Christine Applequist, prepared a "to do" list on the project, including the relocation of three fire hydrants. Applequist testified that it would have taken no more than two months to relocate the hydrants. That same month, Applequist's duties were reassigned to Diane Kravif, an employee of Parson's predecessor, De Leuw, Cather & Company. Kravif's employer had a consulting services contract with the City pursuant to which Kravif was loaned to the City as a temporary program manager. Applequist gave her list of remaining work to Kravif. Applequist did not order relocation of the fire hydrant in question prior to turning over her files to Kravif.

In July 1996, Kravif wrote a memorandum indicating that funding had been authorized for repaving and restriping the area in question and that the striping plans were available. The area was scheduled to be repaved and restriped the week of November 5, 1996. There is no evidence that Kravif made any arrangements to have the relocation of the fire hydrant coincide with the scheduled work. At a weekly construction meeting on October 31, 1996, an SSA representative inquired about the status of the hydrant relocation. There were discussions either before, during or after the meeting that leaving the hydrant in place would pose a threat to safety. It appeared to the City's principal construction inspector, Howard Morlock, that the task had been overlooked, and he directed the City's construction inspector, Dennis Neilan, to prepare a work order. The same day as the meeting, Neilan prepared a work order for the City's maintenance department, but he did not specify a completion date. Neilan was unaware that he could designate the task as an emergency priority with an "E" code, and he simply requested the task to be completed "ASAP." He did not follow up on the work order. The fire hydrant in question was not relocated prior to the repaving and restriping of the area around it, which took place November 5 through 8, 1996. After the restriping was completed, SSA immediately moved its cargo containers into the area.

The fire hydrant in question was painted bright yellow and four vertical matching yellow concrete guardposts surrounded it. The hydrant was located in the middle of a newly created traffic lane or aisle between rows of containers. On November 9, 1996, one day after the restriping was completed, Kathy Young, a longshoreperson employed by SSA, was driving a small truck looking for a missing container when she collided with one of the guardposts in front of the hydrant. Young admitted that she was not looking straight ahead because she was looking at the containers. The fire hydrants were relocated in January 1997.

*Procedural History*

Young sued the City and others for personal injury. The City filed a cross-complaint against SSA for contractual indemnity. SSA in turn filed a cross-complaint for equitable indemnity against Parsons. The cross-complaints were severed from Young's action, which was tried to a jury. The jury found that the City's property was in a dangerous condition at the time of the accident, the dangerous condition was the cause of the accident, and the dangerous condition was created by a negligent or wrongful act or omission of a City employee acting within the scope of employment. The jury found that the City was 40 percent at fault, Young was 25 percent at fault and other parties were 35 percent at fault. After reducing the award to account for Young's own negligence, the trial court entered judgment against the City in the amount of $1,938,990.29. The City appealed the judgment and thereafter settled with Young for the full amount of the judgment.

The City's cross-complaint against SSA proceeded to a bench trial. At the conclusion of the City's case, SSA filed a motion for judgment under Code of Civil Procedure section 631.8.[1] The trial court granted the motion. In a lengthy statement of decision, the court found that the City was actively negligent and therefore SSA had no duty to indemnify the City under the Agreement. Because SSA was not liable to the City, the court dismissed SSA's cross-complaint against Parsons as moot. The court found that Parsons was the prevailing party and ordered SSA to pay Parsons's costs. The City has now appealed the judgment in favor of SSA, and SSA has filed a cross-appeal from the order awarding costs to Parsons.

## DISCUSSION

## I. THE CITY'S APPEAL FROM THE JUDGMENT IN FAVOR OF SSA[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] Code of Civil Procedure section 631.8 provides in part: "(a) After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence."

[*] See footnote, *ante,* page 672.

## II. SSA'S CROSS-APPEAL FROM THE AWARD OF COSTS TO PARSONS

After the City filed a cross-complaint for contractual indemnity against SSA, SSA in turn filed a cross-complaint for equitable indemnity against Parsons. Because the trial court ruled that SSA was not liable to the City for indemnity, it dismissed SSA's cross-complaint against Parsons as moot. The court then ordered SSA to pay Parsons's costs of $18,821.26 on the ground that Parsons was the prevailing party under Code of Civil Procedure section 1032. SSA contends the trial court erred in concluding that Parsons was the prevailing party. Where, as here, the determination of whether costs should be awarded is an issue of law on undisputed facts, we exercise de novo review. (*Acosta v. SI Corp.* (2005) 129 Cal.App.4th 1370, 1374 [29 Cal.Rptr.3d 306].)

Code of Civil Procedure section 1032, subdivision (b), provides: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." The statute defines "prevailing party" as follows: " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034." (Code Civ. Proc., § 1032, subd. (a)(4).)

The trial court concluded that Parsons was a prevailing party because it was "a defendant in whose favor a dismissal is entered." SSA contends this was error, arguing that because the cross-complaint against Parsons was dismissed as moot, the dismissal was not in favor of either party. SSA points out that its indemnity cross-complaint against Parsons was a contingent claim because SSA sought indemnity from Parsons *only if* the City prevailed on its claim against SSA. Because the City did not prevail, the contingency never arose, or, as SSA puts it, "the cross-complaint never ripened into an actual adversarial claim between SSA and Parsons."[2]

---

[2] In support of its position, SSA relies upon *Miller v. American Honda Motor Co.* (1986) 184 Cal.App.3d 1014 [229 Cal.Rptr. 523]. But that case discussed an earlier version of Code of Civil Procedure section 1032, which had a different definition of "prevailing party" than exists in the current version. We therefore do not find that case to be instructive.

Parsons counters that dismissal of a complaint or cross-complaint is always in favor of the defendant or cross-defendant. Parsons points out that while SSA received nothing by way of its cross-complaint, Parsons received what it sought—dismissal. SSA acknowledges that Parsons achieved its litigation objective of avoiding liability on the cross-complaint, but argues that SSA also achieved its litigation objective of prevailing in the City's action against it and recovering indemnity from Parsons only if SSA lost to the City. SSA also argues that because the dismissal of the cross-complaint was "merely an inevitable clerical act" flowing from the defeat by SSA of the City's action against it, Parsons did not prevail against SSA.

■ A dismissal of an action against a defendant based on mootness grounds will always be a mere clerical act. But that does not mean that the dismissal was not in the defendant's favor. Parsons is correct that the dismissal of the cross-complaint against it allowed Parsons to achieve its litigation objective of avoiding liability.

There are no cases precisely on point, but Parsons cites to three cases which are instructive. In *Santisas v. Goodin* (1998) 17 Cal.4th 599 [71 Cal.Rptr.2d 830, 951 P.2d 399], the California Supreme Court concluded that where plaintiffs voluntarily dismissed their action with prejudice, the defendants were "defendants in whose favor a dismissal has been entered." (*Id.* at p. 606.) Accordingly, the defendants were considered "prevailing parties" entitled to recover their costs as a matter of right under Code of Civil Procedure section 1032, subdivision (b).

In *Crib Retaining Walls, Inc. v. NBS/Lowry, Inc.* (1996) 47 Cal.App.4th 886 [54 Cal.Rptr.2d 850], the plaintiffs filed a construction defect lawsuit against Crib Retaining Walls, Inc., which cross-complained against NBS/Lowry, Inc., seeking equitable indemnity and contribution. (*Id.* at p. 888.) The plaintiffs filed an amended complaint adding NBS as a defendant. NBS eventually settled with the plaintiffs, then obtained both approval of the settlement as being in good faith under Code of Civil Procedure section 877.6 and a dismissal of Crib's indemnity cross-complaint. (*Crib Retaining Walls, Inc. v. NBS/Lowry, Inc., supra*, at p. 889.) The trial court's denial of costs to NBS was reversed. The appellate court found that NBS was a party in whose favor a dismissal was entered and was therefore entitled to costs as a matter of right. (*Id.* at p. 890.) Quoting from *Rappenecker v. Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 263 [155 Cal.Rptr. 516], the court cautioned against engrafting exceptions onto the clear language of Code of Civil Procedure section 1032: " '[O]ne should not read into the statute allowing costs a restriction which has not been placed there. "In general, a court should not look beyond the plain meaning of a statute when its language is

clear and unambiguous, and there is no uncertainty or doubt as to the legislative intent. [Citation.]" ' " (*Crib Retaining Walls, Inc. v. NBS/Lowry, Inc.*, *supra*, at p. 890.)

In *Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609 [68 Cal.Rptr.2d 224], the plaintiffs sued a defendant in four separate lawsuits. The defendant filed cross-complaints for indemnity against a third party in all four lawsuits. After the third party settled with the plaintiffs and obtained a good faith settlement determination, the third party obtained a dismissal of the indemnity cross-complaints and was awarded costs as the prevailing party. (*Id.* at p. 612.) The appellate court affirmed, finding that a cross-defendant who obtains the dismissal of the cross-complaint after a good faith settlement with the plaintiff is the prevailing party for purposes of a cost award. (*Id.* at p. 613.) The court noted that the language of Code of Civil Procedure section 1032 is "clear and unambiguous" and that "[t]here is no exception in the cost statute for dismissals obtained as the result of a good faith settlement determination by the trial court." (*Great Western Bank v. Converse Consultants, Inc.*, *supra*, at p. 614.)

SSA argues these cases are distinguishable because different policy considerations are at play when a good faith settlement bars recovery on a cross-complaint. Allowing a cross-defendant to recover its costs following a determination of good faith settlement "facilitates the legislative purposes of encouraging settlements and promoting equitable sharing of damages by the parties at fault." (*Great Western Bank v. Converse Consultants, Inc.*, *supra*, 58 Cal.App.4th at p. 615.) SSA argues that, by contrast, awarding costs to a cross-defendant when a cross-complaint has been dismissed as moot would not promote any public policy goals but would instead encourage defendants to delay filing cross-complaints against responsible parties until after the trial of the plaintiff's action and therefore create a multiplicity of actions.

■ We are mindful of this concern and loathe to encourage judicial inefficiency. But we will not engraft exceptions that do not exist onto a statute. ■ There is no exception in the cost statute for dismissals of cross-complaints obtained on the ground that the cross-complaint has become moot. When a cross-complaint is dismissed as moot, the cross-defendant is one in whose favor the cross-complaint was dismissed and is therefore a prevailing party under Code of Civil Procedure section 1032 entitled to costs as a matter of right.

## DISPOSITION

The judgment in favor of SSA on the City's cross-complaint for contractual indemnity is affirmed. The order awarding costs to Parsons is affirmed. Costs on appeal are awarded to SSA on the appeal and to Parsons on the cross-appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.