Filed 1/2/15; pub. order 1/29/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RAND MACQUIDDY, | B251752 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC488675) |
| v. | |
| MERCEDES-BENZ USA, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael L. Stern, Judge. Affirmed in part, reversed in part and remanded with directions.

Romano Stancroff and Mark Romano for Plaintiff and Appellant.

LeClairRyan and Peter M. Hart for Defendant and Respondent.

_____

After experiencing problems with his Mercedes-Benz that required multiple repair attempts, plaintiff Rand MacQuiddy filed suit against defendant Mercedes-Benz, LLC (Mercedes-Benz) under the Song-Beverly Consumer Warranty Act (Civ. Code, §§ 1790, et seq.; the Act) and the federal Magnuson-Moss Warranty Act (15 U.S.C. § 2301). MacQuiddy sought a refund for the car and a civil penalty for the alleged willful violation of the Act. In its answer to the complaint, Mercedes-Benz admitted it had not been able to conform the car to the applicable warranties within the time frames set forth in the Act. Mercedes-Benz also admitted it had not yet replaced the car or made restitution, but asserted it would offer to reimburse MacQuiddy as required under the Act. MacQuiddy subsequently rejected a statutory offer to compromise in which Mercedes-Benz offered to repurchase the car for an amount consistent with the Act, and to pay MacQuiddy's attorney fees and costs incurred up to that point. Because Mercedes-Benz admitted liability for failure to repurchase or replace the car under the Act, and the parties stipulated to a restitution amount, trial proceeded only on MacQuiddy's claim for a civil penalty. A jury found Mercedes-Benz did not willfully fail to comply with the Act.

On appeal, MacQuiddy contends the trial court erred in denying his motion to compel discovery responses and in granting a protective order that prevented him from taking two "persons most knowledgeable" depositions. MacQuiddy further challenges the trial court order denying his motion for attorney fees, denying in part his motion for costs, and awarding Mercedes-Benz its costs. We reverse the trial court order's order, but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2010, MacQuiddy bought a 2010 Mercedes-Benz E550 C two-door coupe. On one occasion in August 2011, he could not get the car to start. The same thing happened on three separate occasions in November 2011, January 2012, and May 2012. After each incident, MacQuiddy took the car to the W.I. Simonson dealership for repair. In May 2012, the dealership kept the car for approximately 30 days.

During the May to June 2012 period when the car was in the shop, MacQuiddy spoke with a service advisor at the dealership twice a week to "ascertain [the] status" of the car, and to determine "if there was anything that [he] could do to help to try and move things along." MacQuiddy wanted his car back and was frustrated that the shop could not find and solve the problem. Sometime between June 10th and 12th, MacQuiddy called Mercedes-Benz customer assistance at the suggestion of the dealership. At trial, MacQuiddy testified: "It was suggested to me by the dealership . . . that I contact . . . Mercedes-Benz USA because they were still having . . . problems . . . getting . . . feedback on . . . what the problem might be. And also that . . . it was now to the point where there might be some form of . . . compensation that might be due."

The customer service representative said he had the records of the service visits. MacQuiddy asked if there was anything the representative could do to "escalate it to where the technical team could get more involved with [the] car so [he] could get [his] car back." MacQuiddy testified as to the representative's response: "He directed me . . . back to W.I. Simonson and said that . . . further work . . . further follow-through and contact should go through them and that they would make sure that the technical team worked with the . . . people at the dealership." According to MacQuiddy, the representative said he understood and respected that MacQuiddy had experienced a lot of trouble and there would be "some type of compensation through, but he did not say what type." MacQuiddy neither requested that Mercedes-Benz repurchase the car, nor discussed a buyback with the representative. MacQuiddy testified the conversation ended with MacQuiddy thanking the representative and the representative: "direct[ing] me to . . . further conversations to go through the dealer." MacQuiddy understood that he would work with the service advisor at the dealership.

A day or two after the conversation, the dealership informed MacQuiddy his car was ready to be picked up. The service advisor told MacQuiddy that Mercedes-Benz would contact him. MacQuiddy did not hear from Mercedes-Benz again. He did not try

3

to contact the company. After approximately one month, he contacted a lawyer.[1] On July 20, 2012, MacQuiddy filed suit alleging claims under the Song-Beverly and Magnuson-Moss Acts. MacQuiddy sought rescission of the purchase contract and restitution of the money he had paid for the car, as well as a civil penalty of two times his actual damages.

In late August 2012, Mercedes-Benz answered the complaint. In the answer, the company admitted that it or its authorized repair facility was unable to conform MacQuiddy's car to the applicable express and implied warranties after a reasonable number of attempts, or within 30 days. Mercedes-Benz further admitted it had "not yet replaced the new motor vehicle or [made] restitution in accordance with the Act" but stated it would "offer to reimburse Plaintiff under the Act, in an amount equal to the actual price paid or payable by Plaintiff, including any charges for transportation and manufacturer-installed options . . . and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which Plaintiff is entitled, including but not limited to, reasonable repair, towing, and rental car costs actually incurred by Plaintiff." The answer admitted MacQuiddy was entitled to revoke acceptance of the car under the Act and was entitled to reimbursement of the price paid, "less that amount directly attributable to use by the Plaintiff prior to discovery of the nonconformities." The answer further admitted MacQuiddy was entitled to the "aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action."

---

[1] At the May 2013 trial, MacQuiddy testified that since the car was returned to him in June 2012, the problem starting the car had not reoccurred.

4

**Section 998 Offer**

In late September 2012, Mercedes-Benz served MacQuiddy with an offer to compromise pursuant to Code of Civil Procedure section 998 (section 998). The offer contained the following term: "Pursuant to California Code § 1793.2(d)(2), MBUSA offers to repurchase Plaintiff's 2008 [*sic*] Mercedes-Benz E550 ("E550") . . . in an undamaged condition, save normal wear and tear, for the amount of the vehicle down payment, any and all payments made, and the amount of Plaintiff's outstanding loan obligation related to the purchase of the subject vehicle, if any, as well as any collateral charges and incidental costs in accordance with Civil Code § 1793.2(d)(2)(B), less a reasonable mileage offset in accordance with Civil Code § 1793.2(d)(2)(C), all to be determined by court motion if the parties cannot agree." The offer further provided Mercedes-Benz would pay "Plaintiff's recoverable court costs, expenses, and reasonably-incurred attorney fees pursuant to Civil Code § 1794(d) to be determined by the Court by way of a noticed motion." The offer indicated the fee and cost amount would be calculated as if MacQuiddy was found to have prevailed in a section 1794, subdivision (d) action as of the date of the offer, except that Mercedes-Benz would not be liable for a multiplier greater than 1.0 and MacQuiddy could "recover for fees and costs reasonably and actually incurred in bringing such a fee/cost motion."

MacQuiddy objected to the offer and did not accept it.

**Discovery Issues**

In November 2012, MacQuiddy moved to compel discovery responses from Mercedes-Benz. The motion concerned 11 special interrogatories, 19 document requests, and 13 requests for admissions. The discovery requests related to Mercedes-Benz's actions in MacQuiddy's case, as well as Mercedes-Benz's general practices and policies, and the E550 C in general. For example, the requests included such topics as all inspections of MacQuiddy's car; all contacts Mercedes-Benz had with anyone regarding the car; the dates the car was at an authorized repair facility; any request by MacQuiddy for a repurchase or replacement of the car; and the reasons for any denial. MacQuiddy also sought discovery of Mercedes-Benz's policies or procedures since 2007 concerning

5

refunds or replacements under the Act; its procedures for handling customer complaints; records of the same defect appearing in other cars of the same year, make, and model as MacQuiddy's car; and Mercedes-Benz's warranty claims policy and procedure manuals and related documents.

In addition to objecting to the discovery requests as overbroad, harassing, argumentative, burdensome, and not in good faith, Mercedes-Benz objected: "MBUSA has already admitted liability in this action and has agreed to repurchase Plaintiff's vehicle. Thus, MBUSA contends that Plaintiff has not propounded this discovery in good faith and has propounded such discovery to harass MBUSA and its attorneys and to cause unnecessary delay and needless increase in the cost of litigation."

MacQuiddy also noticed the depositions of persons most qualified from Mercedes-Benz and W.I. Simonson, with accompanying document demands. MacQuiddy sought to depose the witnesses on topics such as Mercedes-Benz's policies for responding to consumer complaints regarding defective vehicles; MacQuiddy's "requests for repurchase" of his car; the company's policies for complying with repurchase or replacement demands under the Act; the repairs to the car; communications between Mercedes-Benz and the dealership about the car; allegations of "customer abuse, misuse or lack of information"; service bulletins or recalls related to MacQuiddy's car; and complaints by owners of the same car. Mercedes-Benz sought a protective order to prevent the depositions. Mercedes-Benz argued that since it had admitted it failed to comply with the Act, the depositions were unnecessary. Mercedes-Benz further argued that to the extent MacQuiddy was seeking discovery to prove the failure to comply was willful, the effort was improper because MacQuiddy was not entitled to a civil penalty as a matter of law due to his failure to serve a notice demanding compliance with the Act.

The trial court denied MacQuiddy's motion to compel and granted the protective order. The record does not indicate MacQuiddy attempted any other discovery.

**Trial and Judgment**

At trial, the parties stipulated MacQuiddy was entitled to $68,948.07 under the Act for repurchase of the car. Each side presented only one witness. MacQuiddy testified as detailed above. A witness for Mercedes-Benz who was responsible for handling customer repurchase or replacement requests under the Act testified he did not receive a buyback demand from MacQuiddy before the suit was filed. He testified that after receiving the suit, he determined Mercedes-Benz should repurchase the car. He also testified that, had he been asked to evaluate MacQuiddy's car before the suit was filed, he would have recommended a repurchase. The only issue presented to the jury was whether to impose a civil penalty against Mercedes-Benz for willfully failing to repurchase or replace the car. After brief deliberations, the jury returned a special verdict finding Mercedes-Benz did not willfully fail to repurchase or replace the car.[2]

The court entered a judgment on the special verdict. The judgment stated MacQuiddy had lost his claim for a civil penalty, but included the following stipulated language: "It is further ordered and adjudged that, by admission and stipulation of Defendant . . . MacQuiddy is entitled to restitution in the amount of Sixty-Eight Thousand Nine Hundred Forty-Eight and 07/100 ($68,948.07) Dollars in exchange for return of the subject vehicle to Defendant . . . . The Court shall determine which party has prevailed in this action and whether that party is entitled to costs and/or attorney fees in separate proceedings."

**Attorney Fees and Costs**

MacQuiddy subsequently filed a motion seeking $74,530 in attorney fees as the prevailing party in the litigation. He contended he had secured a net monetary recovery, thus he was the prevailing party and the Act mandated an award of attorney fees. Mercedes-Benz opposed the motion, arguing the fees were not "reasonably incurred" to

---

[2]     The jury began deliberations at 11:46 a.m. It returned a verdict that afternoon, after the noon recess, and before 2:50 p.m., when, after remarks from the trial court thanking the jurors and a brief colloquy between the court and counsel, the transcript for that day concluded.

7

litigate the civil penalty claim, and no fees should be awarded for work done after the section 998 offer was made. Both sides moved for costs. They filed opposing motions to tax costs.

The trial court awarded Mercedes-Benz costs, excluding attorney fees. The court denied MacQuiddy's motion for attorney fees. The court taxed all of MacQuiddy's requested costs except filing fees for the complaint and service of process costs.

MacQuiddy appealed from the judgment and the court's attorney fee and costs order.

## DISCUSSION

## I.      The Song-Beverly Consumer Warranty Act

We begin with a brief summary of the relevant portions of the Act, commonly known as the automobile "lemon law." (*Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718, 721.) Under Civil Code section 1793.2, subdivision (d)(2), "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle in accordance with subparagraph (A) or promptly make restitution to the buyer in accordance with subparagraph (B). However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle."

With respect to restitution, Civil Code section 1793.2, subdivision (d)(2)(B) provides: "In the case of restitution, the manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer."

8

Civil Code section 1794, subdivision (a) authorizes a buyer of consumer goods to bring an action for recovery of damages and other relief for the failure to comply with the Act. Under section 1794, subdivision (c): "If the buyer establishes that the failure to comply was willful, the judgment may include, in addition to the amounts recovered under subdivision (a), a civil penalty which shall not exceed two times the amount of actual damages."[3]

## II. MacQuiddy Has Not Established the Trial Court's Discovery Rulings Were Prejudicial

MacQuiddy contends the trial court erred in denying his motion to compel and in granting the protective order preventing the two depositions he sought to take. According to MacQuiddy, the result of these rulings was that he was unable to secure any pre-trial discovery. We find no basis for reversing the judgment.

We review a trial court's discovery orders for an abuse of discretion. " ' "The trial court's determination will be set aside only when it has been demonstrated that there was 'no legal justification' for the order granting or denying the discovery in question." ' [Citation.]" (*Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 740 (*Lickter*).) Moreover,

---

[3] While section 1794, subdivisions (a) and (c) apply to any consumer goods under the Act, section 1794, subdivision (e) concerns remedies specifically for the buyer of a new motor vehicle. Under subdivision (e)(1), "if the buyer establishes a violation of paragraph (2) of subdivision (d) of Section 1793.2, the buyer shall recover damages and reasonable attorney's fees and costs, and may recover a civil penalty of up to two times the amount of damages." However, there are exceptions. The manufacturer will not be liable for the civil penalty if it maintains a "qualified third-party dispute resolution process which substantially complies with Section 1793.22." (§ 1794, subd. (e)(2).) Further, under subdivision (e)(3): "After the occurrence of the events giving rise to the presumption established in subdivision (b) of Section 1793.22, the buyer may serve upon the manufacturer a written notice requesting that the manufacturer comply with paragraph (2) of subdivision (d) of Section 1793.2. If the buyer fails to serve the notice, the manufacturer shall not be liable for a civil penalty pursuant to this subdivision." Subdivision (e)(5) indicates that "if the buyer recovers a civil penalty under subdivision (c), the buyer may not also recover a civil penalty under this subdivision for the same violation." MacQuiddy argues he only attempted to secure the civil penalty under section 1794, subdivision (c), which required a showing of willfulness, rather than under section 1794, subdivision (e)(1).

9

when a plaintiff does seek not writ review of the trial court's discovery rulings and instead appeals from the judgment, he or she must "show not only that the trial court erred, but also that the error was prejudicial"; i.e., the plaintiff must show that it is reasonably probable the ultimate outcome would have been more favorable to the plaintiff had the trial court not erred in the discovery rulings. (*Ibid*, citing *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800-802.)

Here, we need not decide if the trial court's discovery rulings were an abuse of discretion because, even assuming they were, MacQuiddy has failed to demonstrate it is reasonably probable the outcome of the trial would have been more favorable to him had the trial court granted his motion to compel, and allowed him to take the two depositions he sought. (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532-533 [appellant bears burden to make affirmative showing the trial court committed error and that error resulted in a miscarriage of justice].) The only contested issue was whether Mercedes-Benz willfully failed to replace or repurchase MacQuiddy's car. A significant portion of the discovery MacQuiddy sought was only peripherally related to this issue, such as requests for admission seeking to establish the basic elements of a violation of the Act, and interrogatories and document requests regarding the dates of service, none of which were contested. While requests regarding MacQuiddy's contacts with Mercedes-Benz or its authorized repair facility may have been more centrally relevant to the civil penalty claim, MacQuiddy has not established he was prejudiced by the trial court's ruling in light of the fact that he also had personal knowledge of these contacts; he testified at trial; and his testimony was uncontroverted.

Similarly, MacQuiddy has not shown he was prejudiced by the denial of discovery regarding Mercedes-Benz's failure to correct the defects in the car since that issue was uncontested at trial, his testimony regarding the ongoing problems with the car was uncontroverted, and also uncontroverted was his testimony that the Mercedes-Benz customer service representative admitted he could see the record of service visits. Although on appeal MacQuiddy asserts evidence responsive to his requests existed, such as a document Mercedes-Benz sought to use at trial memorializing the Mercedes-Benz

10

contacts with MacQuiddy, the trial court ultimately excluded the document and prohibited Mercedes-Benz from using the portions to which MacQuiddy objected. The mere existence of the document does not establish MacQuiddy was prejudiced by his inability to procure it before trial. He also argues courts have found relevant discovery requests seeking a car manufacturer's warranty policies and procedures, policies on buyback requests, and other customer complaints. Yet he does not show that, in this case, had the trial court compelled responses to his requests or denied the protective order, it is reasonably probable the jury would have found Mercedes-Benz willfully failed to repurchase or replace his car.

Indeed, the sum of MacQuiddy's prejudice argument on appeal is that the categories of information and documents he sought were relevant, and the discovery requests may have turned up admissible evidence. This is insufficient. (*Lickter, supra,* 189 Cal.App.4th at p. 741.) "[T]he miscarriage of justice standard for reversal requires a showing 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.] ' "[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance,* more than an *abstract possibility.*" [Citation.]' [Citation.]" (*Cellphone Termination Fee Cases* (2009) 180 Cal.App.4th 1110, 1126.) MacQuiddy has failed to show it is reasonably probable the jury's verdict would have been more favorable to him had the trial court granted his motion to compel or denied the motion for a protective order. (*Carolina Casualty Ins. Co. v. L.M. Ross Law Group, LLP* (2012) 212 Cal.App.4th 1181, 1197-1198.)

## III. The Trial Court Did Not Abuse its Discretion in Determining MacQuiddy was not a Prevailing Party for Purposes of Attorney Fees Under the Act

MacQuiddy challenges the trial court ruling denying him attorney fees and the determination that he did not prevail under the Act. We find no error.

Under section 1794, subdivision (d), a buyer who prevails in an action brought under the Act "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on

11

actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."

The Act does not define "prevail." MacQuiddy contends the trial court abused its discretion because, despite losing the civil penalty claim, he secured a net monetary recovery, and was therefore a prevailing party under Code of Civil Procedure section 1032 (section 1032), subdivision (a)(4). However, section 1032 is the general costs statute. A prevailing party under section 1032 is not necessarily a prevailing party under a separate attorney fee statute. (*Foothill Properties v. Lyon/Copley Corona Associates* (1996) 46 Cal.App.4th 1542, 1554 (*Foothill Properties*).) As explained in *Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, regarding the Act: "[W]here (as here) a fee-shifting statute is concerned, a number of Courts of Appeal have taken the approach that attorney fees recovery is governed by the fee-shifting statute itself, rather than a rigid adherence to Code of Civil Procedure section 1032. Under this analysis, if the particular fee-shifting statute does not define prevailing party, then the trial court should simply take a pragmatic approach to determine which party has prevailed. That is, the trial court would determine which party succeeded on a practical level, by considering the extent to which each party realized its litigation objectives. [Citations.] Section 1794(d) is likewise a remedial fee-shifting statute, and thus the same practical approach to the issue of prevailing party is applicable to section 1794(d)." (*Wohlgemuth, supra,* 207 Cal.App.4th at p. 1264.) Thus, that MacQuiddy obtained a net monetary recovery in the action did not necessarily render him the prevailing party entitled to attorney fees under section 1794, subdivision (d).[4]

---

[4]     *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139 (*Reveles*), disapproved on other grounds by *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1261 and *Snukal v. Flightways Mfg., Inc.* (2000) 23 Cal.4th 754, does not mandate a contrary result. In *Reveles,* the court analyzed the plaintiff's entitlement to costs as a prevailing party under section 1032 (*Reveles,* at p. 1151), but separately considered his entitlement to attorney fees as a prevailing party under Civil Code section 1717 (*Reveles,* at pp. 1151-1158). Although the court also stated that because the Act did not define "prevailing party," it would use the general definition under section 1032, as explained above, other

12

We review the trial court's prevailing party ruling for abuse of discretion. (*Wohlgemuth,* at p. 1258.) " 'Because the "experienced trial judge is the best judge of the value of professional services rendered in his court," we will not disturb the trial court's decision unless convinced that it is clearly wrong, meaning that it is an abuse of discretion. [Citations.] However, " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " [Citations.]' " (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148-149 (*Graciano*).)

As noted above and further explained in *Graciano,* when "prevailing party" is undefined by the statute, " ' "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives, whether by judgment, settlement or otherwise. [Citation.]" [Citation.] In assessing litigation success, *Hsu v. Abbara* (1995) 9 Cal.4th 863, 877 . . . instructs: "[C]ourts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.' For example, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective." [Citations.]' [Citation.]" (*Graciano, supra*, at pp. 150-151.)

In this case, while MacQuiddy secured repurchase of the car for a stipulated amount of over $68,000, Mercedes-Benz's liability for a repurchase amount, calculated under the statute, was never contested. Mercedes-Benz admitted liability under the Act in its answer to the complaint. Although the parties did not stipulate as to the amount of restitution until the beginning of trial, the amount was not litigated. The only issue

_____

cases have rejected this approach. (See *McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1456 ["We emphatically reject the contention that the prevailing party for the award of costs under section 1032 is necessarily the prevailing party for the award of attorneys' fees."].)

13

litigated and tried was whether Mercedes-Benz was also liable for a civil penalty. MacQuiddy lost on that issue. Using a pragmatic approach, and being guided by equitable considerations, the trial court could conclude within the confines of the applicable principles of law, that MacQuiddy was not a prevailing party because he did not achieve his main litigation objective: obtaining a civil penalty.

*National Computer Rental, Ltd. v. Bergen Brunswig Corp.* (1976) 59 Cal.App.3d 58, is instructive. In *National Computer*, the plaintiff sued the defendant in a contract action concerning an equipment lease. The plaintiff sought three items of recovery. The defendant admitted the first two items – unpaid rent and taxes – but denied any obligation for the third, a termination fee. Following a court trial, the plaintiff was denied recovery for the termination fee, but was granted judgment for the unpaid rent and taxes. The court determined the defendant was the prevailing party, and, pursuant to an attorney fee provision in the contract and Civil Code section 1717, awarded the defendant attorney fees. The reviewing court affirmed the prevailing party determination. The court explained the defendant had tendered the unpaid rent in connection with a section 998 offer; the plaintiff rejected the tender because it sought the taxes and termination fee. Because of the defendant's admission, "[l]iability for the unpaid rent and the taxes was never litigated at the trial, which proceeded only on the termination fee issue." (*Id.* at p. 63.) The court thus concluded: "Defendant prevailed on the only issue in the case; it is the 'prevailing party' within the meaning of section 1717, even though plaintiff nominally holds a judgment for an amount never disputed and never litigated." (*Ibid.*)

Likewise, in this case MacQuiddy's monetary judgment was for an amount never disputed and on an issue never litigated because it was conceded. The trial court could reasonably conclude that under the circumstances of this case, in which there was no evidence MacQuiddy made a pre-litigation demand for repurchase of his car, Mercedes-Benz immediately admitted liability for failure to replace or repurchase the car and offered to do so, the amount of restitution was not contested, and the entire trial was concerned with the civil penalty, MacQuiddy's main litigation objective was to obtain a civil penalty. The fight in this case was not about the repurchase of the car. (See *Foothill*

14

*Properties, supra,* 46 Cal.App.4th at pp. 1555-1556; *Epstein v. Frank* (1981) 125 Cal.App.3d 111, 124 ["It is not always the case however that the party in whose favor the final judgment is entered will be deemed to be the prevailing party. For example, the party who prevails on all of the issues which were actually litigated at the trial will be deemed the prevailing party even though the judgment may be entered in favor of the opposing party"].) The trial court did not abuse its discretion in determining MacQuiddy did not prevail under the Act and therefore was not entitled to attorney fees.

**IV.     The Trial Court Erred in Finding the Mercedes-Benz Section 998 Offer Valid**

MacQuiddy contends the trial court erred in denying a portion of his costs on the grounds that Mercedes-Benz's offer to compromise under section 998 was valid, and that MacQuiddy failed to receive a judgment more favorable than the offer. We agree the trial court erred in finding the section 998 offer valid.

Under section 998, "if the plaintiffs reject a defendant's offer to compromise and then fail to win a more favorable judgment, the plaintiffs cannot recover their postoffer costs and must pay the costs the defendant incurred after the offer." (*Chen v. Interinsurance Exchange of Automobile Club* (2008) 164 Cal.App.4th 117, 124, fn. omitted (*Chen*).) "We independently review whether respondent's 998 settlement offer was valid." (*Id.* at p. 122.)

To be valid, an offer under section 998 may include nonmonetary terms and conditions, but it must be unconditional. (*Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793, 799.) "[F]rom the perspective of the offeree, the offer must be sufficiently specific to permit the recipient meaningfully to evaluate it and make a reasoned decision whether to accept it, or reject it and bear the risk he may have to shoulder his opponent's litigation costs and expenses. [Citation.] Thus, the offeree must be able to clearly evaluate the worth of the extended offer." (*Berg v. Darden* (2004) 120 Cal.App.4th 721, 727.)

15

We focus on one term in the section 998 offer as particularly undefined. Although for the most part the section 998 offer simply offered to comply with the restitution provision of the Act, it limited compliance to repurchase of the car, "in an undamaged condition, save normal wear and tear." This condition inserted uncertainty into the offer, which otherwise tracked the language of the Act. Whether the car was in an "undamaged condition" was not defined, nor was it clear what would happen if MacQuiddy accepted the offer, but Mercedes-Benz subsequently concluded the car was "damaged" beyond normal wear and tear. While the offer allowed that the amount, charges, and costs were "all to be determined by court motion if the parties cannot agree," everything besides the condition of the car was at least minimally determined by the Act itself.

In addition, we fail to see how, following trial, the court could compare the value of obtaining the repurchase of the car without regard to its condition to the offer requiring that the car be "undamaged," in order to determine whether MacQuiddy received a more favorable judgment than the offer. Such an evaluation would require a factual determination of whether the car was damaged, which was not an issue otherwise relevant to the proceedings.

Because of the undefined and subjective nature of the term that Mercedes-Benz would repurchase the "undamaged" car, we conclude the section 998 offer was at least ambiguous, and was therefore not valid. (*Chen, supra,* 164 Cal.App.4th at p. 122.)

## V.     The Trial Court's Costs Order Must Be Reversed

We conclude the trial court's costs order must be reversed. Generally, a trial court's determination of costs is reviewed for abuse of discretion. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) However, where "the determination of whether costs should be awarded is an issue of law on undisputed facts, we exercise de novo review." (*City of Long Beach v. Stevedoring Services of America* (2007) 157 Cal.App.4th 672, 678.)

Due to the invalidity of the offer, section 998 did not operate to cut off MacQuiddy's costs, nor did it entitle Mercedes-Benz to recoup its post-offer costs.[5] Although the trial court granted Mercedes-Benz all of its litigation costs, we conclude this was error.

Under section 1032, subdivision (b), "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." Subdivision (a)(4) defines "prevailing party": " 'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034."

In this case, although the court found MacQuiddy did not prevail under section 1794, subdivision (d), he could still be deemed a prevailing party for purposes of section 1032. (See *Agnew v. State Bd. of Equalization* (2005) 134 Cal.App.4th 899, 912.) The stipulated judgment awarded MacQuiddy a monetary payment in exchange for return of the car. No dismissal was entered in favor of Mercedes-Benz. Although Mercedes-Benz defeated the civil penalty claim, it had no independent claims and did not obtain any affirmative "relief," monetary or otherwise. (See *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1142-1143 [plaintiff received monetary recovery, but defendant prevailed on declaratory relief claims in a cross-complaint; remanded for trial court to exercise its discretion to determine prevailing party under

---

[5]     We note our conclusion that the section 998 offer was invalid does not affect our conclusion that the trial court did not abuse its discretion in finding MacQuiddy was not entitled to attorney fees. MacQuiddy was not entitled to attorney fees, irrespective of section 998, because the court determined he did not prevail under the Act.

section 1032 (a)(4)].)  We see no legal basis for a conclusion that Mercedes-Benz was a "prevailing party" within the meaning of section 1032, subdivision (a)(4).  (*Chinn v. KMR Property Management* (2008) 166 Cal.App.4th 175, 189 [rejecting argument that statute allows for more than one party to qualify as a prevailing party under the mandatory cost award provision; Legislature could have, but did not, provide for trial court to exercise discretion to award costs in the event more than one party qualified as a prevailing party].)

Thus, MacQuiddy was entitled to his litigation costs, excluding attorney fees, under section 1032.

## DISPOSITION

The costs order is reversed and the trial court is directed to vacate its order denying MacQuiddy costs, and awarding costs to Mercedes-Benz.  On remand, the court is to permit MacQuiddy to file a new Memorandum of Costs, and to recalculate such costs without regard to Mercedes-Benz's section 998 offer.  In all other respects the judgment, and the order denying attorney fees, are affirmed.  Each party to bear its own costs on appeal.


                                        BIGELOW, P. J.

We concur:



          RUBIN, J.



          FLIER, J.


18

Filed 1/29/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RAND MACQUIDDY, | B251752 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC488675) |
| v. | |
| MERCEDES-BENZ USA, LLC, | **ORDER CERTIFYING PUBLICATION** |
| Defendant and Respondent. | (No Change in Judgment) |

THE COURT*:

The opinion in the above entitled matter filed on January 2, 2015, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\* BIGELOW, P. J.                RUBIN, J.                FLIER, J.