Filed 8/12/22 Janssen v. Oremor of Riverside CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ANDREW JANSSEN, | |
| Plaintiff and Appellant, | E073623 |
| v. | (Super.Ct.No. RIC1714690) |
| OREMOR OF RIVERSIDE LLC, et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge. Affirmed.

Rosner, Barry & Babbitt, Hallen D. Rosner and Arlyn L. Escalante, for Plaintiff and Appellant.

Mahoney & Soll, Paul M. Mahoney and Richard A. Soll for Defendants and Appellants.

Plaintiff Janssen sued Oremor of Riverside, doing business as BMW of Riverside, and related BMW entities for fraud and violations of the Consumer Legal Remedies Act

1

(CLRA) when, after driving a certified pre-owned BMW vehicle for nearly two years after his purchase, he learned that the paint on parts of the vehicle appeared to have been reapplied, affecting the vehicle's trade-in value. Following a jury trial in which special verdicts were returned, the jury rejected all the plaintiff's claims except the claim for a limited CRLA claim, for which it awarded plaintiff $4500.00.[1] Both plaintiff and defendant filed motions for new trial, but the motions were denied. Plaintiff sought attorneys' fees under the CLRA violation on the ground he was the prevailing party on that claim, but the trial court denied the motion. Both parties appealed.

On appeal, plaintiff claims (1) the $4500 in damages awarded by the jury were inadequate and the verdict was infected by defense counsel's misconduct; (2) the trial court erred in permitting the defense to call duplicative and unqualified experts; and (3) the trial court erred in determining plaintiff was not the prevailing party for purposes of awarding attorneys' fees.

On cross-appeal, defendant argues (1) the trial court erred in refusing to set aside the damage award of $4500; and (2) the trial court erred in denying defendant's motion for judgment notwithstanding the verdict because plaintiff provided inadequate notice under the CRLA.

We affirm.

---

[1] While the jury awarded damages to the plaintiff, it did not find any actual misrepresentation.

**BACKGROUND**

In September 2015, plaintiff Andrew Janssen was looking for a convertible BMW to purchase, specifically, a certified pre-owned vehicle (CPO). Looking on the website of BMW North America, he found the car he wanted, a 2012 BMW 335i convertible, at BMW of Riverside, and purchased it on November 15, 2015, for $35,000, plus tax and licensing costs. The vehicle was advertised and sold to Mr. Janssen as a BMW CPO vehicle, in pristine condition. Before agreeing to purchase the vehicle, Mr. Janssen asked the BMW of Riverside salesperson if the vehicle had been in any prior accidents or crashes. The salesperson told Mr. Janssen that the vehicle had not been in any prior accidents or crashes. Plaintiff received a CPO checklist, indicating that an inspection of the vehicle showed it met BMW standards to be a CPO vehicle.[2] After three weeks of negotiations, plaintiff subsequently purchased the vehicle, which was delivered to San Diego.

Mechanically, the vehicle performed well, but after driving the vehicle for more than a year (17,000-18,000 miles), plaintiff began to look for another car with more trunk

---

[2] The vehicle had been purchased at an online auction conducted by Prime Auto Auction from Valencia BMW and delivered to BMW of Riverside with a CPO certification from Valencia BMW. When the vehicle was delivered to BMW of Riverside, the buyer briefly examined the vehicle to determine if it had been damaged in transit but found no visible defects. At BMW of Riverside, Jason Carpio, a service technician, performed a pre-sale inspection of the vehicle and filled out the BMW CPO checklist. This technician indicated that if a vehicle had been certified by another dealer, they (BMW of Riverside) would recertify it after reviewing the Carfax report. Because the Carfax report indicated no prior accidents, and because the vehicle had been certified as a CPO by Valencia BMW, the procedure followed at BMW Riverside was to inspect and recertify the vehicle.

space. Mr. Janssen had not been in any accidents or crashes with the vehicle since his purchase and had not repainted the vehicle or had any of the vehicle's panels repaired during his ownership.

Mr. Janssen wanted to trade in the vehicle for another vehicle with larger trunk space. He took the vehicle to CarMax[3] to look at cars, and had the BMW 335i appraised. The appraisal indicated the vehicle's value was $23,000, based on prior paintwork to the driver fender, passenger quarter panel and passenger rear door.

Plaintiff was surprised by the appraisal, so he took the vehicle to another auto buying group in San Diego called CarZar, that advertised it could beat CarMax's offered price. The associate at CarZar examined the vehicle and also pointed out the paint "damage," so plaintiff left without an offer from this group.

At this point, plaintiff decided not to invoke the provisions of his warranty, but, instead, to find an attorney. Although he continued to drive the car, he felt that BMW had misrepresented its condition and did not want it anymore. He Googled "auto fraud in San Diego," where he saw the advertisement by his present counsel's firm, "Auto Fraud Legal Center."

Before agreeing to take the case, counsel told plaintiff the vehicle needed to be inspected by his expert, Mr. Jannesari. On April 27, 2017, using an electronic paint thickness gauge, Jannesari inspected plaintiff's vehicle and noted areas with thicker paint on the right side of the vehicle, indicating the vehicle had been repainted. Specifically,

---

[3] CarMax must be distinguished from CarFax. The former is a used car retailer, while the latter is a web-based service that supplies vehicle history reports on used cars.

4

his report noted that the right quarter, right door and right fenders had been repainted.[4]  In his opinion, the paint on the vehicle was inconsistent with BMW standards in that it did not match factory texture.

Plaintiff's counsel sent a notification letter to defendants[5] pursuant to the CLRA on June 20, 2017, along with a copy of the proposed complaint, asserting plaintiff was not seeking monetary damages under the CLRA, but if no correction was made within 30 days, the lawsuit would be filed.  As for the nature of the "correction" to be made by defendants, plaintiff demanded that defendants pay off plaintiff's loan, refund to plaintiff $12,449.34 paid in monthly payments, plus $3,500 in attorneys' fees and costs.  The proposed complaint (which was subsequently filed) sought, in addition to rescission and restitution of the purchase price, consequential and incidental damages.

On August 8, 2017, plaintiff filed his complaint against Oremor of Riverside (Oremor), BMW of North America (BMW), BMW of Riverside, and Great American Insurance Company, alleging (1) violations of the Consumer's Legal Remedies Act (CLRA), Civil Code section s 1750 et seq. by BMW and BMW of Riverside, (2) Violation of the Song-Beverly Consumer Warranty Act, Civil Code sections 1790 et seq., against BMW and BMW of Riverside, (3) violation of the Unfair Competition Law (UCL), Business and Professions Code, section 17200 et seq., by BMW and BMW

---

[4] Mr. Jannesari's description of damage to the right fenders varies from the description of the CarMax associate and other witnesses who described thicker paint on the left front fender (driver's side) and right rear quarter panel.

[5] The letter was addressed to all the defendants originally named in the complaint.

5

of Riverside, (4) Fraud and deceit by BMW and BMW of Riverside, (5) Negligent misrepresentation by BMW and BMW of Riverside, (6) violation of Vehicle Code section 11711 against Great American Insurance Company.

In December 2017, the vehicle was inspected by several individuals from BMW of Riverside and was attended by plaintiff's expert. At this inspection, Charles Ramsay, the buyer of the vehicle at the online auction, observed no visible signs of paint damage without using a paint meter and saw no evidence of Bondo, a filler, used on the car. However, Ramsay observed a spot that appeared to have been painted, but nothing unusual or "sub-par" as such defects may appear on new vehicles. This type of issue can be corrected by sanding and applying a clearcoat on top of the spot.

Charles Hughes, the director of operations at BMW of Riverside who was knowledgeable in all aspects of auto repairs, also did a visual inspection of the vehicle, looking for evidence of impact damage. Although he found evidence of repainting, all the original factory seams and Cosmoline[6] were in their original condition. He indicated that a paint gauge can show where paint was reapplied or where Bondo might be present, but the fact this vehicle has plastic fenders would prevent an accurate gauge of thickness. Nevertheless, after the inspection, he agreed there was evidence the left front fender had been painted and there was thicker paint on the right rear quarter, which could be restored to its original luster with color-sanding and buffing, which would cost a few thousand

---

[6] Cosmoline is a petroleum jelly used as a rust preventative. (Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/Cosmoline, accessed August 10, 2022.)

dollars. He indicated the right rear quarter panel and left fender were problems existing when the vehicle was at Valencia BMW, but he did not know why the information was not included in the "deal jacket" where any known damage would be listed. He also indicated that Carpio's practice of recertifying a BMW previously certified by another dealership did not conform with BMW's practices.

However, with a paint meter, Robert Mistretta, the shop foreman for BMW of Riverside who also participated in the December 2017 inspection, determined that the left front fender and right rear quarter panel of the vehicle had been repainted. He indicated that "fisheyes" observed in paint are not considered a problem because cars can come from the factory with such defects. If a customer complained about such a defect, the vehicle would be color-sanded and buffed.

Shop foreman Robert Castillo, the fourth BMW witness, also inspected the vehicle and made similar findings: the left front fender had some small imperfections in the clearcoat and the paint itself, and there were signs of possible respraying of paint, but that the factory protective coating was present, indicating the vehicle had not been involved in an accident. In other words, he did not see "damage" to the right rear panel, but noticed the finish looked different. He also did not observe what plaintiff's expert had described as the "bullseye" on the right quarter panel and did not see any hard paint lines or tape lines.

At trial, plaintiff presented his expert's evidence that on various parts of the vehicle the paint was thicker than in others, indicating prior paintwork. There was also

7

evidence of defects in the paint, including a "bullseye," paint shrinkage (where primer has not been properly applied causing paint to get sucked into the repair area), and sand scratch swelling. However, none of these defects were noticed by plaintiff during his ownership of the vehicle until he took it in for trade in and appraisal.

The cause was tried by jury, which rendered special verdicts rejecting the majority of plaintiff's claims, finding that BMW did not make any misrepresentations, but concluding in item 4, in the CLRA section, that defendant had represented the vehicle was of a particular style, standard or quality. The jury awarded him $4500, and judgment was entered in that amount. Judgment was entered upon the special verdicts awarding plaintiff $4500 against defendant and dismissing the action against Great American Insurance Company.

Defendant filed a motion for judgment notwithstanding the verdict, to set aside the special verdict. Plaintiff opposed the motion. Then plaintiff filed a motion for new trial on the issue of damages, or for a new trial. Plaintiff raised numerous grounds, including irregularities in the proceedings by the court and opposing party, including abuses of discretion; insufficiency of the evidence to support the verdict, which plaintiff described as an illegal verdict; and errors of law to which plaintiff took exception.

On July 10, defendant filed its memorandum of costs, seeking to recover $16,500.87. On July 19, 2019, plaintiff filed his memorandum of costs, seeking recovery of $39,355.50 in costs. On July 24, 2019, plaintiff filed a motion to tax costs claimed by

8

defendant, on the ground that defendant was not the prevailing party. On August 2, 2019, defendant filed a motion to strike or tax plaintiff's costs.

On August 16, 2019, the trial court heard the motions attacking the judgment and denied both defendant's motion for judgment notwithstanding the verdict and plaintiff's motion for new trial. On September 4, 2019, plaintiff filed his notice of appeal and defendant filed a notice of cross-appeal on September 10, 2019.

Then plaintiff filed a motion for attorneys' fees, seeking $353,657.10 under the CRLA, comprising $258,168 in attorneys' fees and $39,355.50 in costs previously requested in his memorandum of costs. On January 13, 2020, at the combined hearing on the memoranda of costs, cross-motions to strike or tax costs, and the motion for attorneys' fees, the trial court granted plaintiff's motion to tax defendant's costs, and partially granted defendant's motion to strike or tax plaintiff's costs, allowing costs to plaintiff for $2305.89 in deposition costs, $3421.60 for service of process, $9141.99 for witness fees, $2855 for court ordered transcripts, and $5955 for other costs. The court denied plaintiff's motion for attorneys' fees.

On March 3, 2020, an amended judgment was filed reflecting the original judgment entered upon the special verdicts and adding costs in the amount of $15,674.74.[7] Notices of appeal and cross-appeal were again filed by the parties.

---

[7] By our calculations, the actual amount of costs should have been $23,679.48, when the specifically allowed costs are added.

9

I.      *Plaintiff's Appeal*

A.      *The Jury Award was Adequate*

Plaintiff argues that the jury award was inadequate.  We disagree.  Plaintiff's complaint did not seek damages for the diminished value or repair of the vehicle; instead sought to rescind his purchase agreement for the 2013 BMW 335i and to recover the purchase price due to fraudulent misrepresentations about the vehicle.  He also sought general, incidental or consequential damages pursuant to Civil Code section 1780.  Because the jury failed to find any fraud—intentional or negligent, the prayer for relief relating to rescission and restitution were not warranted.  The amount awarded by the jury, consistent with the testimony of plaintiff's expert regarding the cost of repainting the affected parts of the vehicle, is presumed to reflect general and consequential damage.

Because this case was determined by special verdicts, we must adhere to certain legal principles.  When a special verdict is used and there is no general verdict, we will not imply findings in favor of the prevailing party. (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 285.)  If a fact necessary to support a cause of action is not included in such a special verdict, judgment on that cause of action cannot stand. (*Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325-327.)  "Because a cause of action for fraudulent misrepresentation requires a finding that the defendant made a misrepresentation, the absence of such a finding precludes judgment for the plaintiff on that claim." (*Behr v. Redmond* (2011) 193 Cal.App.4th 517, 531.)

Another important principle governs our review: Because plaintiff drafted the instruction and special verdicts, the error was invited and plaintiff's failure to correct the mistake in the special verdict forfeits the issue. (See *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242-1243.)

Applying these principles to the CLRA claim, the statute makes clear that its purpose is to protect consumers from deceptive business practices and to provide efficient and economical procedures to secure such protection. (Civ. Code, § 1760.) But central to the provisions of Civil Code section 1770, as it pertains to this case, and the descriptions therein of unfair and deceptive business practices, is the requirement that the transaction involve misrepresentation of the "source, sponsorship, approval, or certification of goods or services" (Civ. Code, § 1760, subd. (a)(2)), or "Misrepresenting the affiliation, connection, or association with, or certification by, another," (Civ. Code, § 1760, subd. (a)(3)), or "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have" (Civ. Code, § 1760, subd. (a)(5)), or "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (Civ. Code, § 1760, subd. (a)(7).)

The gravamen of plaintiff's claims against defendant is that the vehicle was represented to be a CPO certified vehicle, when, in fact, it did not meet BMW's standards. The evidence adduced at trial showed that when the car was purchased by

11

defendant from Valencia BMW, it was found to be enrolled as a CPO vehicle by Valencia BMW. While the Valencia BMW CPO checklist referred to the vehicle's need for reconditioning to the front and rear bumpers as well as work to the right rear rocker panel, the left fender, and the right quarter panel, records showed that BMW Valencia spent $1475 on the bumpers and rear quarter panel, although it apparently did not finish the reconditioning process, deciding to sell the vehicle at auction. Nevertheless, the vehicle was certified by Valencia BMW as a CPO with the appropriate signatures on the CPO form indicating that all corrections had been made. It would have been incorrect for the jury to find the vehicle was not a CPO, where the certification existed.

After the presentation of evidence, plaintiff prepared and submitted special verdicts relating to his CLRA and Song-Beverly causes of action. In the CLRA section, Special Verdict No. 4, the only verdict returned in plaintiff's favor, asked, "Did BMW of Riverside represent the 2013 BMW 335i was of a particular standard, quality, or grade?" To which the jury responded, "Yes." Unfortunately for plaintiff, as the drafter, the special verdict did not ask the jury if the defendant represented that the BMW was of a certain standard, quality, or grade "if it was of another," as required for recovery under the CLRA.

Plaintiff points to the fact that his initially proposed special verdicts included the quoted language, and argued that the reason the language was not included in the final version that went to the jury was because the court had ordered the language removed from the special verdict. The record indicates otherwise. During the discussion between

the court and counsel of the instructions and special verdicts, defendant did not object to the special verdicts, although he made perfunctory objections to some of the special instructions. Nevertheless, BMW's objections acknowledged the instructions used the statutory language from section 1760.[8] Defendant did not object to the special verdicts, including special verdict No. 4.

Instead, the record reflects a dialogue respecting the inclusion of statutory terms contained in Civil Code section 1770 that were surplusage and did not apply to the facts of the case. For instance, the proposed special verdict No. 4 asked "Did BMW of Riverside represent the 2013 BMW 335i was of a particular standard, quality, or grade, or the 2013 BMW 335i was of a particular style or model, if it was of another?" When defense counsel asked that that meant, the court explained "It means they sell it as something - - you know, is it the 2.0 liter engine and it's really a 1.0 liter engine or something." Plaintiff then offered, "We can get rid of - - from the word 'or,' we can get rid of." No additional clarification was provided and the discussion ended.

It may well be that plaintiff only intended to delete the language "or the 2013 BMW 335i was of a particular style or model," but that is not what he did. He deleted the key element, "if it was of another," that would have, if found true by the jury, resulted in a finding that that BMW had made a misrepresentation. Yet the mistake was actually beneficial to plaintiff because the jury responded "yes" to that question alone, where it

_____

[8] The reference should have been to Civil Code section 1770, which defines the unlawful acts for which a person my seek recovery under the CLRA.

13

had responded "No" to every other question requiring it to find BMW made a misrepresentation.

For this reason, we cannot imply or assume that the jury found defendant had certified the vehicle was of a particular standard, grade, or quality when it was not, an essential requirement for rescission and restitution relief under the CLRA. The absence of this finding is fatal to plaintiff's claim he was entitled to rescission and restitution. The statutory remedies are inapplicable to representations, only to misrepresentations. As such, the award of $4500, which exceeds the estimated $4000 that his own expert indicated would be required to correct the paint job to BMW standards, was intended to compensate plaintiff for special or consequential damages pertinent to the fact the vehicle was a CPO with imperfect paintwork. The verdict was more than adequate, and the trial court properly denied plaintiff's motion for new trial on the ground of inadequate damages.

We also reject plaintiff's unsupportable assertion that defense counsel's improper argument to the jury was responsible for the verdict.

During his closing argument, defense counsel commented on the minimal nature of the defects in the paint on the vehicle which could easily and economically have been fixed without litigation: "[I]n this litigious world we're in, this case shouldn't have been here. This case should have involved a quick letter or call, check the car out, fix the paint, and life goes on and we go on. That's not what happened. This turned into a first-class war." The statement was a fair comment considering the evidence as it was

14

adduced and plaintiff's choice of remedies. It did not improperly misstate the evidence or the law, or appeal to the jury's passions or sympathies, although it may have appealed to the jury's collective common sense.

Plaintiff also complains that during closing argument, defense counsel used the pronoun "we" when referring to his client. However, plaintiff failed to object on this ground during the argument, when a curative instruction might have been given. Instead, plaintiff's counsel referred to defendant's statement in his rebuttal, arguing that defense counsel acted improperly. That the jury awarded plaintiff anything at all is a demonstration of lack of prejudice to plaintiff from defendant's closing, especially where plaintiff's counsel himself told the jury, "*We* didn't make a big deal of it," twice. Plaintiff made several other references to plaintiff using the same personal pronoun, "we," for example, "What *we're* suing the dealer for . . . " It is ironic that a plaintiff's attorney would seek relief from a verdict alleged to be the product of misconduct of which he himself is guilty.

Nevertheless, this claim has been forfeited on appeal because counsel failed to object to the statements or demonstrate how they impacted the jury's decision. In fact, plaintiff did not object to defendant's closing argument on any ground,**9** so the issue was

---

**9** Plaintiff's counsel did object to defense counsel's *opening* statement on the ground it constituted argument, but the court overruled the objection and plaintiff does not explain how opening statements prejudiced his case. We note that defendant objected to plaintiff's opening statement on the same ground, and that the trial court cautioned plaintiff against arguing in the opening statement. At no point during the opening statement or in closing argument did defense counsel urge the jury to disregard the law, as plaintiff now argues, and, absent an objection on that ground, we do not address it.

forfeited. (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 794-795.) "Ordinarily, failure to object waives any error." (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1227, citing *Cassim, supra*.)

In *Cassim,* the Supreme Court held that while attorneys have wide latitude to discuss the case in closing argument, it is misconduct to suggest that the jury should decide the case based on facts not in evidence. (*Cassim, supra*, 33 Cal.4th at p. 795.) The court noted that the absence of a request for a curative admonition does not forfeit the issue for appeal if "'"'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.'" [Citation.]" (*Id.,* at p. 795.) In other words, the failure to object is excusable where an objection would be futile.

Here, plaintiff did not object to the closing argument, and has not demonstrated that an objection or a cautionary instruction by the court would have been futile, so the issue is forfeited. More importantly, when compared with plaintiff's counsel's own rhetoric and hyperbole throughout the trial, defense counsel comported himself with restraint.

The jury verdict was adequate and is supported by substantial evidence.

B.      *The Trial Court Did Not Err in Allowing Defense Witnesses to Testify*

Plaintiff argues the trial court erred by permitting the defense to present "duplicative and unqualified expert testimony." We disagree.

16

At the outset, we note that the four witnesses called by the defendant testified largely on matters as to which they were percipient witnesses. Nevertheless, Evidence Code section 720, provides: "(a) A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert. [¶] (b) A witness' special knowledge, skill, experience, training, or education may be shown by any otherwise admissible evidence, including his own testimony." The Evidence Code also authorizes a lay witness to express an opinion that is: (a) Rationally based on the perception of the witness; and (b) Helpful to a clear understanding of his testimony. (Evid. Code, § 800.)

In other words, "[t]here is no rigid classification of expert and nonexpert witnesses, and experts need not necessarily be professionals. Expertness is relative to the subject, and any person who has special knowledge, skill, or experience in any occupation, trade, or craft may be qualified as an expert in his or her field." (1 Witkin, Cal. Evid. 5th Opinion (2021) Evid, § 39.)

In determining the qualification and competency of a person proffered as an expert, the two primary questions are whether the person has sufficient background to absorb and evaluate information on the subject and whether he or she has access to reliable sources of information about the subject. (*Naples Restaurant, Inc. v. Coberly Ford* (1968) 259 Cal.App.2d 881, 883.) In considering these questions, we must keep

17

two points in mind: First, the trial court determines whether the proffered testimony meets minimum requirements for admissibility. If so, challenges to the witness's qualifications and credibility are addressed to the weight to be given the testimony, which is for the jury to determine. (See *People v. Chavez* (1985) 39 Cal.3d 823, 829.)

We review the trial court's ruling excluding or admitting expert testimony for abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773, citing *People v. McWhorter* (2009) 47 Cal.4th 318, 362; *People v. Gardeley* (1996) 14 Cal.4th 605, 619 [disapproved of on a different point in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13]; *People v. Mickey* (1991) 54 Cal.3d 612, 687–688; *Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.) A ruling that constitutes an abuse of discretion has been described as one that is "so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) The court's discretion must be exercised within the confines of applicable legal principles, with recognition that its exercise may implicate a party's ability to present its case. Rather, it must be exercised within the confines of the applicable legal principles.

In the present case, the defense witnesses had the requisite experience and education to qualify as experts. Additionally, each witness testified as a percipient witness. Witness Ramsay was the dealership buyer who successfully bid on the plaintiff's vehicle at the auction. But he was not a mechanic. Witness Hughes, who was also present at the inspection and whose knowledge was based on mechanical matters,

18

was looking for evidence of impact damage to the vehicle. Witness Mistretta, a shop foreman, was the individual who used the paint gauge to measure the thickness of paint during the inspection. Witness Castillo, the head shop foreman, examined parts of the body of the vehicle to determine if it had been involved in an accident, as plaintiff had testified.[10]

Each of the witnesses was personally involved in the inspection of the vehicle that occurred in December 2017, so each had personal knowledge of the results of the inspection coupled with their work experience and training. While there was some overlap in their testimony, it was not duplicative. Their testimony disclosed that each served a different purpose at the inspection, depending on the dealership department in which each worked. Moreover, plaintiff had ample opportunity to impeach each witness as to both his qualifications and his opinion.

In any event, even if there had been error, the erroneous admission of expert testimony only warrants reversal if "'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" (*People v. Prieto* (2003) 30 Cal.4th 226, 247, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) Plaintiff can point to no prejudice where his own expert attended the inspection and was permitted to offer his version of the event and his valuation of the cost to repair the paintwork. Further, the jury verdict was not the result of testimony about the

---

[10] Plaintiff was allowed to testify as to his personal definition of the term "accident" as including a scratch on the car door, in order to imply that the repainting of his vehicle was the result of more serious body damage that was not disclosed.

19

vehicle inspection, but rather on the jury's determination that defendant made no misrepresentation.

There was no abuse of discretion.

C.     *The Trial Court Properly Concluded Plaintiff was not the Prevailing Party on the CRLA Cause of Action for Purposes of Awarding Attorneys' Fees.*

Plaintiff argues that the trial court erroneously concluded he did not prevail on the CLRA cause of action in denying his motion for attorneys' fees. He asserts that because he was awarded a net monetary recovery, he qualifies as the prevailing party on that claim. We disagree.

We begin with the standard of review: "'Generally, the trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion, which should not be disturbed on appeal absent a clear showing of abuse of discretion. [Citation.] But the determination of the legal basis for an attorney fee award is subject to independent review. [Citation.] In such a case, the issue involves the application of the law to undisputed facts. [Citation.]'" (*Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1258, quoting *Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.) Where the issue of entitlement to attorney fees and costs depends on the interpretation of a statute, our review is de novo. (*Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1056.)

Code of Civil Procedure, section 1033.5, permits recovery of attorney's fees as an item of costs, where authorized by statute. (Code Civ. Proc., § 1033.5, subd. (a)(10).)

20

Civil Code section 1780, governing remedies for deceptive practices prohibited by Civil Code section 1770, provides for recovery of attorney's fees "to a prevailing plaintiff in litigation filed pursuant to this section." (Civ. Code, §1780, subd. (e); see also, Code Civ. Proc., § 1032.) An award of attorney fees to "a prevailing plaintiff" in an action brought pursuant to the CLRA is mandatory, even where the litigation is resolved by a pretrial settlement agreement, absent an enforceable agreement to the contrary. However, a plaintiff who is not the prevailing party under the CLRA is not entitled to attorney fees, to which end we must review whether plaintiff was a "prevailing plaintiff." (*Kim v. Euromotors West/The Auto Gallery*, *supra*, 149 Cal.App.4th at pp. 178-179.)

"[A] prevailing party under Code of Civil Procedure section 1032 is not necessarily a prevailing party under a separate attorney fee statute." (*Duff v. Jaguar Land Rover North America, LLC* (2022) 74 Cal.App.5th 491, 504, citing *Foothill Properties v. Lyon/Copley Corona Associates* (1996) 46 Cal.App.4th 1542, 1554.) Because the CLRA does not define the term "prevailing party," in deciding prevailing party status under the statute, the court should adopt a pragmatic approach, determining prevailing party status based on which party succeeded on a practical level. (*J&A Mash & Barrel, LLC v. Superior Court* (2022) 74 Cal.App.5th 1, 42-43; *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 150, citing *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1018 [interpreting Code Civ. Proc., § 405.38]; *Galan v. Wolfriver Holding Corp.* (2000) 80 Cal.App.4th 1124, 1127–1128 [interpreting Civ. Code, § 1942.4]; *Heather Farms Homeowners Assn. v. Robinson* (1994) 21 Cal.App.4th 1568,

21

1571-1574 [interpreting Civ. Code, § 1354]; *Gilbert v. National Enquirer, Inc.* (1997) 55 Cal.App.4th 1273, 1276-1277 [action for commercial appropriation under Civ. Code, § 3344].)

Under the practical--or pragmatic--approach, the court determines the prevailing party by analyzing which party realized its litigation objectives. (*Castro v. Superior Court, supra*, 116 Cal.App.4th at p. 1019.) Under this approach, a party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective. (*Id.,* at pp. 1019-1020.) Thus, in *Villa de Las Palmas Homeowner Assn. v. Terifaj* (2004) 33 Cal.4th 73, where a homeowner association (HOA) sought to enforce an unrecorded no-pet rule, the original complaint was referred for arbitration. Before arbitration was completed, the HOA adopted and recorded a formal no-pet rule in the covenants, conditions and restrictions declaration. Thereafter, the HOA filed an amended complaint alleging the same causes of action. The HOA prevailed and the condominium purchaser opposed the award of attorneys' fees which included fees incurred in prosecuting the original complaint. This court upheld the award of attorneys' fees to the HOA and the Supreme Court affirmed our decision. The Supreme Court agreed that "[o]n a 'practical level' [citation], the Association 'achieved its main litigation objective,'" citing *Castro, supra*, 116 Cal.App.4th at p.1020. (*Villa De Las Palmas Homeowners Assn. v. Terifaj, supra*, 33 Cal.4th at p. 94.)

Here, plaintiff's litigation objective was to rescind the purchase contract and obtain restitution of the full purchase price, as well as to enjoin defendant's alleged deceptive business practices. Those remedies depended upon a showing that defendant was guilty of misrepresentation that the vehicle was a CPO when it was not. But the evidence showed the vehicle was a CPO, rightly or wrongly, and the jury expressly rejected any theory that defendant was guilty of fraud or misrepresentation, whether intentional or negligent. It found only that BMW had represented that the vehicle was of a particular quality or character, without concluding that the vehicle did not meet that particular quality or character. Rescission and restitution, or an injunction, as remedies sought under the CLRA, were not awarded to plaintiff so he did not prevail on his litigation objectives.

Having failed to achieve his litigation objectives under the CRLA, that is, a finding that defendants were guilty of misrepresentation, plaintiff was not the prevailing party under the CLRA cause of action for purposes of an award of attorneys' fees. Under the circumstances, the trial court did not abuse its discretion in determining that plaintiff was not the prevailing party for purposes of recovering attorneys' fees.

II.     *Defendant's Appeal*

A.     *The Trial Court Properly Denied Defendant's Motion for Judgment Notwithstanding the Verdict.*

Defendant argues the trial court erred in denying its motion for judgment notwithstanding the verdict because plaintiff was not entitled to money damages.  We disagree.

Code of Civil Procedure section 629, subdivision (a), provides:  "(a) The court, before the expiration of its power to rule on a motion for a new trial, either of its own motion, after five days' notice, or on motion of a party against whom a verdict has been rendered, shall render judgment in favor of the aggrieved party notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made."

""'The purpose of a motion for judgment notwithstanding the verdict (JNOV) is not to afford a review of the jury's deliberation but to prevent a miscarriage of justice in those cases where the verdict rendered is without foundation.' [Citation.]'" (*Russell v. Department of Corrections & Rehabilitation* (2021) 72 Cal.App.5th 916, 935.)  "'The scope of appellate review is to determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's conclusions . . . ' [Citation.]" (*Sukoff v. Lemkin* (1988) 202 Cal.App.3d 740, 743.)  ""'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." [Citation.]  But we do not weigh the evidence or judge the credibility of

24

witnesses.'" (*Russell v. Department of Corrections & Rehabilitation, supra*, 72 Cal.App.5th at p. 935, quoting *IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 639–640.)

When reviewing the denial of a JNOV, the appellate court will ordinarily use the same standard the trial court uses in ruling on the motion and determine "whether it appears from the record, viewed most favorably to the party securing the verdict, that any substantial evidence supports the verdict." (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 284.) The trial court properly denies the motion if there is any substantial evidence, or reasonable inferences to be drawn from the evidence, to support the verdict. (*Ibid.*) Our determination with respect to the presence of the requisite substantial evidence is de novo. (*IIG Wireless, Inc. v. Yi, supra*, 22 Cal.App.5th at p 639; *Hirst v. City of Oceanside* (2015) 236 Cal.App.4th 774, 782.) As the court in *IIG Wireless, Inc.* noted, "Substantial evidence may be contradicted or uncontradicted. [Citation.] '"Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.' [Citation.] But we do not weigh the evidence or judge the credibility of witnesses. [Citation.]" (*IIG Wireless, Inc. v. Yi, supra*, 22 Cal.App.5th at pp. 639-640.)

Defendant's premise is that because the jury did not find it had misrepresented the vehicle to be of a certain quality or character which it was not, the jury necessarily rejected plaintiff's CLRA claim. This argument has a certain appeal, but it ignores the fact that the vehicle's CPO certification by defendant was based solely on its certification

25

by Valencia BMW without a full inspection. While perhaps not a deceptive business *practice,* per se, BMW's recertification of the vehicle after purchasing it from the online auction without a complete BMW CPO inspection led to the net economic recovery by plaintiff. As defense witness Charles Hughes testified, Jason Carpio's recertification of plaintiff's vehicle without a full and complete inspection was not in conformance with the dealership's practices.

The evidence showed that the vehicle was delivered to BMW of Riverside as a CPO vehicle. A CPO inspection sheet was provided to defendant showing the inspection by Valencia BMW and the corrective actions taken before it was put up for auction as a CPO. In advertising plaintiff's vehicle as a CPO, defendant did not misrepresent the vehicle because there was, indeed, a BMW certification. On this basis, the jury's rejection of the misrepresentation allegations can be viewed as consistent with its special verdict.

Yet, because the employee responsible for recertifying the vehicle—according to defendant's standard business practices—did not perform a complete inspection, including careful examination of all relevant documents prepared by Valencia BMW, the paint issues were not discovered before plaintiff's purchase. The dealer's failure to notice the paint issues during the recertification inspection thus resulted in "actual, statutory, general, incidental, and consequential damages from BMW and BMW of Riverside," as plaintiff sought in his complaint.

26

The jury's special verdict thus conformed with the evidence that the vehicle's paint required reconditioning despite the CPO certification, as defense witnesses who had participated in the December 2017 inspection had conceded. Defendant did not object to the special verdict after plaintiff revised it, so it cannot complain about it on appeal. The evidence also supported the amount of the verdict based on testimony about the cost of sanding, buffing, and applying clearcoat to the finish. The court properly denied the motion.

*B.     The Notice to Defendants under CRLA was Adequate Absent a Timely Objection.*

Defendant also argues the judgment should be reversed because plaintiff failed to provide adequate notice of his claim pursuant to Code of Civil Procedure section 1782. It concedes that a notice was mailed to and received by defendant but that the remedy requested was rescission and restitution of the purchase price, not correction of the paint defects. We disagree because defendant waived or forfeited any objection.

Pursuant to Civil Code section 1782, subdivision (a), before a plaintiff may commence suit under the CLRA, the consumer must "(1) Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770, and (2) Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." The section further provides that "[t]he notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the

place where the transaction occurred or to the person's principal place of business within California." (Civ. Code, § 1782, subd. (a).)

"'[The notice] requirement exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice or indicates within that 30-day period that it will correct those wrongs within a reasonable time.'" (*Benson v. Southern California Auto Sales, Inc.* (2015) 239 Cal.App.4th 1198, 1206, citing *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1261.) "The clear intent of the act is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41.)

In the present case, plaintiff sent a letter notifying defendant of his intention to file a CLRA complaint, demanding rescission and restitution for the misrepresentation. At the inception of the trial, defendants entered into a stipulation with plaintiff that "a CLRA [letter] was sent, and no correction was provided." The purpose of the agreement was to prevent having to admit the letter, which was accompanied by a copy of the complaint, into evidence and "avoid all that fighting about it," to which defendant agreed. During the presentation of plaintiff's case in chief, the parties agreed the jury should be permitted to see the letter, which was accompanied by the complaint, Exhibit No. 38, and be admitted into evidence so the jury could consider it, in light of defendant's cross-examination of plaintiff.

Defendant's conduct amounted to an agreement that the notice was sent and that the notice complied with the CLRA.[11] Our conclusion is buttressed by the fact that during closing argument, the defendant referred to the specific language of the letter in which plaintiff did not advise defendant of the problem with the paint, and, in fact, plaintiff advised defendant he was not seeking money damages under the CRLA "at this time." The complaint, however, did include a claim for "actual, statutory, general, incidental, and consequential damages from BMW and BMW of Riverside." Because the proposed complaint was provided to defendant prior to filing, it was aware of the full scope of recovery sought by plaintiff.

Defendant did not raise any challenge to the inadequacy of the CLRA notice letter until it filed its motion for judgment notwithstanding the verdict. This was not timely. Up to that point, defendant had relied on the letter's contents, arguing that plaintiff was not seeking correction of the poorly applied paint on the vehicle. Having previously stipulated that the notice letter had been sent, and that defendant had received it, defendant forfeited any challenge to the adequacy of the notice letter.

C.      *Plaintiff was the Prevailing Party Respecting Costs Due to his Net Economic Recovery.*

In the trial court, defendant sought to strike or tax all of plaintiff's costs of suit because plaintiff was not the prevailing party. The trial court did tax costs and struck several items of cost from plaintiff's memorandum of costs. The trial court also denied

---

[11] We also note that in defendant's answer to complaint, the inadequacy of the notice was not raised as one of the 25 affirmative defenses.

plaintiff's motion for attorneys' fees on the grounds plaintiff had not satisfied his litigation objectives under the CLRA. But the trial court nevertheless approved some of plaintiff's costs because he garnered a net monetary recovery. Defendant urges us to reverse this finding and ruling.

A prevailing party is entitled "as a matter of right" to recover costs in any action or proceeding unless a statute expressly provides otherwise. (Code of Civ. Proc., § 1032, subd. (b); *Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658; see also, *DeSaulles v. Comm. Hosp. of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1147.) We review the trial court's prevailing party determination for an abuse of discretion. (*Sukumar v. City of San Diego* (2017) 14 Cal.App.5th 451, 464; *City of Santa Maria v. Adam* (2016) 248 Cal.App.4th 504, 516.) "We accept the trial court's resolution of credibility and conflicting substantial evidence, and its choice of possible reasonable inferences that can be drawn from the evidence." (*San Diegans for Open Government v. City of San Diego* (2016) 247 Cal.App.4th 1306, 1322.) "However, a trial court abuses its discretion when factual findings critical to its decision are not supported by substantial evidence." (*Sukumar v. City of San Diego, supra,* 14 Cal.App.5th at p. 464.)

To determine whether the trial court abused its discretion, we must review the entire record, paying particular attention to the trial court's stated reasons and whether it applied the proper standards of law in reaching its decision. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 519-520, citing *Bouvia v. County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1081-1082.)

Code of Civil Procedure section 1032, subdivision (a)(4) defines prevailing party as "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." (*Pont v. Pont* (2018) 31 Cal.App.5th 428, 443.)

Here, while plaintiff did not prevail on the CLRA cause of action, the trial court determined that plaintiff was the prevailing party for purposes of recovering certain costs of suit because plaintiff realized a net monetary recovery. We conclude the trial court's determination was proper. The court's reasons were supported by the evidence and the special verdict that awarded plaintiff a net monetary recovery. Its determination was not arbitrary or capricious. There was no abuse of discretion.

### DISPOSITION

The judgment is affirmed. Each party will bear its own costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

SLOUGH
J.

31